**CENTRAL AGUIRRE SUGAR CO. v. UNITED STATES.**

No. K–325.

Court of Claims.

Feb. 6, 1933.

Howe P. Cochrane, of Washington, D. C. (Harry Friedman and William N. Wood, both of Washington, D. C., on the brief), for plaintiff.

Charles B. Rugg, Asst. Atty. Gen. (George H. Foster, of Washington, D. C., on the brief), for the United States.

Argued before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

This is a suit for the recovery of income and excess profits taxes for the calendar year 1917 in the sum of $331,511.57 alleged to have been erroneously and illegally assessed and collected.

In 1905 the Central Aguirre Sugar Companies was organized as a voluntary association under a declaration of trust of the character commonly referred to as a "Massachusetts Trust." This association in May, 1918, filed its income and excess profits tax returns for the year 1917. The assistant treasurer, Charles G. Bancroft, signed both returns.

In 1919 the Central Aguirre Sugar Companies transferred all of its assets (except a certain sum retained for dividend purposes and certain lands in Puerto Rico) to the Central Aguirre Sugar Company, a corporation under the laws of Puerto Rico, and the latter company assumed all the liabilities of the Central Aguirre Sugar Companies. The transaction was effected through a share for share exchange between the association and the corporation, and it was also provided that the officers and agents of the association should become the officers and agents of the corporation. This agreement was signed on behalf of the association by Charles G. Bancroft, assistant treasurer. The association did not dissolve, but from then on became inactive. The corporation had no other business than that taken over from the association. The same persons who were officers and employees of the association became officers and employees in the company in the same positions which they occupied in the association. The identical place of business of the association became the place of business of the company. The only change was from a voluntary association to a corporation, and, in so changing, the word "Companies" was made "Company." Practically the entire assets were transferred, all the liabilities assumed, a share of stock in one given for a share of script in the other, the same officers were retained in the same positions in both, the same place of business was occupied by both, and Charles G. Bancroft was assistant treasurer of both.

In 1921 Charles G. Bancroft executed an unlimited waiver in the name of the Central Aguirre Sugar Companies, the association, as assistant treasurer, and attached thereto the seal of the association. During this period, the officials of the association and of the company knew an audit was being made by the Commissioner of the returns of the association for the year 1917.

In February, 1923, a second waiver was executed in behalf of the association, and it was signed by J. B. Keyes as treasurer, and the seal of the association was duly placed thereon. This waiver was limited in effect for one year.

In November, 1923, an additional assessment of $528,397.46 was proposed against the Central Aguirre Sugar Companies for the year 1917, and due notice was sent to its home office address in Boston. In December, 1923, J. B. Keyes, the comptroller of the association, who was also the treasurer of the company, replied to the notice, and requested a conference in order to present detailed evidence and explanations. This appeal was filed in behalf of the association, and was signed by the treasurer of the company.

A third waiver was executed on January 15, 1924, by Charles G. Bancroft, assistant treasurer, in behalf of the association and the seal of the association attached thereto. All periods of limitations for the determination, assessment, and collection of internal revenue taxes for the years 1917 and 1918 were waived. The treasurer of the Central Aguirre

Sugar Company who was also the comptroller of the association, forwarded the waiver with the explanation that it was signed by the former assistant treasurer of the association as he was the only available officer of the Central Aguirre Sugar Companies.

In February, 1924, the conference requested was held, and J. B. Keyes, the comptroller of the association and also the treasurer of the company, was present and took an active part in the hearing. Keyes attended other conferences in regard to the same tax liability. Following the protests and conferences, the Commissioner of Internal Revenue on May 19, 1924, addressed a letter to the Central Aguirre Sugar Company at the address of the Central Aguirre Sugar Companies in which was a recomputation of the tax liability of the latter for the year 1917 which showed the amount reduced to the sum of $353,906.16. Although the letter was addressed to the company, it contained a consolidated statement for 1917 for the several members of the affiliated group, the Central Aguirre Sugar Companies, Central Aguirre Company, and Ponce & Guayama Railroad Company, Inc., and the net income of each was separately set out.

The Commissioner assessed the sum of $353,906.18 against the Central Aguirre Sugar Companies on May 29, 1924, and abbreviated the name on the assessment list and made a notation of the assessment on the income tax return of the Central Aguirre Sugar Companies for the year 1917. Subsequently a certificate of overassessment was issued which reduced the amount to $331,511.57. On October 20, 1924, after notice and demand, a check of the "Central Aguirre Sugar Co. by J. B. Keyes, treas.," was given in payment of the amount so reduced. In the letter accompanying the check it was stated, "The Central Aguirre Sugar Companies has received from you a notice and demand of an alleged additional assessment of income and excess profits taxes for the calendar year 1917, * * *" and, "Pursuant to the notice and demand received from you, payment is hereby made in the amount of $331,511.57, of which payment $41,638.80 is made under protest on the ground set forth in the protest attached to the check."

On May 7, 1928, more than three years and five months after the payment of the tax liability of the Central Aguirre Sugar Companies, a claim for refund of the amount was filed by the Central Aguirre Sugar Company and verified by J. B. Keyes, treasurer, alleging as ground for refund that the amount "was the tax of another taxpayer, namely, Central Aguirre Sugar Companies, a voluntary association, and affiliated companies, and was illegally assessed against us and collected from us." The said J. B. Keyes was the comptroller of the association, and was the officer who requested the conferences, who took part in presenting the evidence and explanations whereby the assessment was reduced, who signed one of the waivers, who forwarded the two other waivers, and who sent the check in payment of the tax and was the officer who made the written statement that the Central Aguirre Sugar Companies had received the notice and demand of additional assessment and that the companies, the association, was paying the tax. It was Keyes who signed the check of the company in payment of the tax liability of the companies, and the letter in which the check was transmitted was signed "J. B. Keyes, treasurer of the Central Aguirre Sugar Company, successor corporation of the Central Aguirre Sugar Companies."

On May 7, 1928, the Central Aguirre Sugar Companies filed a claim for refund for the sum of $400,000, claiming assessment and collection had been made out of time. Both of the claims remain unpaid.

On May 18, 1928, a power of attorney was executed by the Central Aguirre Sugar Companies to one Wm. N. Wood, an attorney of this court, to prosecute the claim of the association. It was signed by the vice president of the association and attested by "Charles G. Bancroft, ass't. treasurer," and the corporate seal was attached.

On June 10, 1930, the Central Aguirre Sugar Companies, the association, filed suit in this court to recover the $331,511.57, which it claims was illegally collected.

There are only two questions involved in this case:

(1) Whether the taxes in question were illegally assessed against and collected from the plaintiff instead of the Central Aguirre Sugar Companies. The plaintiff took over the assets of the association and assumed its liabilities. The assessment was made against the Sugar Companies. The plaintiff was not in business or even incorporated in 1917 and had no tax liability for that year. When the notice of assessment was sent to the Sugar Companies, the agents of the plaintiff who were also the agents of the association received the notice, requested the conferences, furnished the waivers, held out to the Commissioner of Internal Revenue that the officer who signed the waivers and attached the

seal of the association was the officer of the association; conducted the negotiations for a reduction of the assessment, and, when the final assessment was made, accepted it in the name and behalf of the association, and sent the check of the company in payment thereof with a protest as to only a part. Keyes and Bancroft were officers of the association. They also became officers of the company. Both were fully cognizant of the relations of the association and the company to each other. Keyes held Bancroft out to the Commissioner as the proper officer of the association to sign the waivers, and Bancroft was the assistant treasurer of the association in 1917, and in 1928 the vice president and trustee of the association recognized him still as the assistant treasurer for Bancroft signed the power of attorney in that year along with the vice president, and attached the seal of the association thereto. It is a far cry now to say Bancroft was not an officer of the association duly authorized to sign the waivers. No such question was raised until years after the payment of the assessment. No protest or objection was made during the negotiations and conferences that the assessment was being made against the company. It was well understood and known by all parties that the assessment was against the association and the negotiations and conferences were conducted and held in the interest of and for the purpose of arriving at the true tax liability of the association for the year in question. The mere fact that the company voluntarily and of its own free will and accord sent its check in payment of the liability, when it had succeeded to the assets of the association and assumed its liabilities, does not make the payment by it compulsory. On the other hand, it plainly shows the company recognized its ultimate liability and made the payment without action at law or suit in equity. Phillips et al. v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289; Burnet v. San Joaquin Fruit & Investment Co. (C. C. A.) 52 F. (2d) 123. See, also, Penn Dixie Cement Corporation v. United States, 74 Ct. Cl. 1240. There can be no recovery on this ground.

(2) The plaintiff contends it is entitled to recover because the assessment and collection of the additional assessment were not timely made. In other words, that the waivers given by the association extending the time in which assessment and collection could be made were invalid and without effect, for the reason the party who signed them was without authority to bind the association. There is no merit in this contention. From what we have said in reference to the first contention it is indubitably shown that the waivers were signed by the duly authorized agent of the association. However, it is asserted that, even if the waivers were signed by the proper officer of the association, nevertheless, under the ruling of the Commissioner, all of them expired before the assessment and collection were made. The returns of the Central Aguirre Sugar Companies for 1917 were filed in May, 1918, and therefore the period for assessment and collection expired in May, 1923, unless extended. Section 277 (a) (2) Revenue Act 1924, 26 USCA § 1057 note. On February 14, 1921, an unlimited waiver was filed. The Commissioner of Internal Revenue issued on April 11, 1923, a pronouncement that all unlimited waivers then on file would expire on April 1, 1924. (Commissioner's mimeograph 3085, Cumulative Bulletin II—1, p. 174.)

The association executed on January 15, 1924, another waiver which purported to extend the time for assessment and collection without any period specified for its expiration. This waiver was given nine months after the Commissioner's notice that the waivers then on file would expire on April 1, 1924, and was intended to and did take the place of the waivers then on file. The assessment was made in May, 1924, and the collection in October, 1924. The waiver was valid and binding and the assessment and collection seasonably made. Cunningham Sheep & Land Co., 7 B. T. A. 652; North American Oil, Consolidated, 12 B. T. A. 68.

The contentions made in this case are of a highly technical nature, totally lacking merit in fact and in law and unmindful of the fact that "Taxation, as it many times has been said, is eminently practical." Tyler v. United States, 281 U. S. 497, 503, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758.

The petition must be dismissed. It is so ordered.

BOOTH, Chief Justice, took no part in the decision of this case on account of illness.