Francis COLLINS

v.

The UNITED STATES.

No. 238–73.

United States Court of Claims.

April 14, 1976.

Peter B. Sang, Portland, Maine, attorney of record, for plaintiff.

Patricia B. Tucker, Washington, D.C., with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D.C., for defendant. Theodore D. Peyser, Jr. and Robert S. Watkins, Washington, D.C., of counsel.

## OPINION

Before NICHOLS, KASHIWA, and KUNZIG, Judges.

KASHIWA, Judge.*

This is an action to recover $3,748.85, plus interest, which represents the amount paid by the plaintiff, Francis Collins, to the Internal Revenue Service to satisfy the proposed income and excise tax deficiencies of Summertime Cafe, Inc., for the years 1964 and 1965. For the reasons stated below, we hold for the defendant.

The plaintiff purchased Summertime Cafe, Inc., in December, 1963. Its principal asset was a seasonal liquor license. The corporation operated a nightclub, the Candy Lounge, from April 1 to November 30 during each of the years 1964 and 1965. By an agreement dated August 3, 1965, Mr. Collins sold the stock of the corporation to Harold Loew.

In the spring of 1968, Mr. Collins was contacted by Revenue Agent D. E. Harrington, who was conducting an audit of Summertime Cafe, Inc.'s, federal income tax returns for 1964 and 1965. The main item under consideration was the band expense deduction claimed for each year. In connection with this audit, Mr. Collins made available to Mr. Harrington the receipts signed by the individual band leaders and also copies of his own personal tax returns for 1964 and 1965. After a review of the receipts, Mr. Harrington told Mr. Collins that the deductions claimed for band expenses were doubtful but that, if the deductions were allowed, the question of cabaret taxes would arise.

Mr. Collins received two revenue agent's reports in May, 1969, in which deficiencies were proposed with respect to Summertime Cafe, Inc.'s, and Mr. Collins' personal income taxes for the years 1964 and 1965. The report addressed to Summertime Cafe, Inc., in care of Mr. Collins proposed the disallowance of the claimed band expense deductions of the corporation plus a negligence penalty for the years 1964 and 1965, and other minor adjustments for 1965. The report addressed to Mr. Collins proposed an adjustment for his personal income taxes based on the inclusion of income in the amount of the disallowed band expenses for each year as a constructive dividend to Mr. Collins. An additional item for 1964 was Mr. Collins' receipt of unreported tip income in the amount of $135.

At Mr. Collins' request a conference was scheduled between John MacDonald, District Conferee, and Mr. Collins to consider the proposed tax deficiencies of both Summertime Cafe, Inc., and Mr. Collins. In preparation for this conference, Mr. MacDonald reviewed the case files and researched case law dealing with the substantiation of claimed expenses. At the first conference with Mr. Collins, Mr. MacDonald reviewed the cases with Mr. Collins and noted that a question existed with respect to whether Mr. Collins had sold the stock or the assets of the corporation. Mr. MacDonald explained that Mr. Collins might be liable for the corporate taxes if he had sold the assets of the corporation. Conversely, as Mr. MacDonald explained, if the stock had been sold, the continuing corporation would be liable for the corporate deficiencies, although the purchasers might look to Mr. Collins for reimbursement if the contract contained a warranty clause. In order to resolve these questions, Mr. MacDonald asked Mr. Collins for a copy of the sale document. In response to this explanation, Mr. Collins became visibly agitated and stated that he did not want to go into the sale and that he would pay the taxes.

The remainder of the first conference and the other three conferences between Mr.

---

* We reach a contrary result to the recommended opinion of Trial Judge C. Murray Bernhardt.

Collins and Mr. MacDonald concerned the amount of taxes due from the corporation and from Mr. Collins. Mr. MacDonald requested the band receipts and other information pertaining to the band expense deductions in issue. On the basis of the information provided, Mr. MacDonald concluded that the band expense deductions claimed by the corporation were allowable.

As Mr. MacDonald had explained to Mr. Collins at their first conference, if the band expense deductions were allowed, an excise (cabaret) tax[1] would then become due. The amounts of corporate cabaret and income tax deficiencies were computed and the imposition of a 25 per cent penalty for failure to file the required cabaret tax returns was proposed. The allowance of the band expense deductions at the corporate level eliminated the proposed constructive dividend to Mr. Collins. Consequently, the only remaining adjustment was the unreported tip income which resulted in a tax deficiency of under $30.

About a week after their last conference, Mr. Collins informed Mr. MacDonald that he had retained legal counsel to assist him with respect to the proposed deficiencies. On August 26, 1969, Mr. Collins executed a power of attorney form authorizing Peter Sang to represent him before the Internal Revenue Service. Thereafter, Mr. Collins' attorney handled all substantive matters concerning the proposed deficiencies.

Mr. Collins' attorney and Mr. MacDonald had one conversation relating to the proposed penalties for failure to file the required cabaret tax returns. After the conversation an affidavit explaining the failure to file the required returns and reaffirming Mr. Collins' willingness to pay the corporate deficiencies was submitted. The affidavit was signed by both Mr. Collins and his attorney. Based on the information contained in the affidavit, Mr. MacDonald recommended that penalties for the failure to file cabaret tax returns not be imposed.

On or about September 12, 1969, Mr. Collins paid the proposed income and cabaret tax deficiencies of Summertime Cafe, Inc., for 1964 and 1965 in the total amount of $3,748.85. In the present action Mr. Collins seeks the recovery of these amounts plus interest.

This is an action for the recovery of amounts paid by the plaintiff to satisfy the proposed tax deficiencies of Summertime Cafe, Inc. This case involves the further consideration of the right of the Internal Revenue Service to accept and retain amounts offered by a third party to satisfy the tax liabilities of a separate entity. Initially, we note that the plaintiff has not argued that Summertime Cafe, Inc., did not owe the income or excise taxes paid or that the taxes were excessive in amount. The plaintiff's position appears to be that the Internal Revenue Service has no right to retain the amounts he tendered to satisfy the proposed corporate deficiencies.

The principal issue is whether the plaintiff was a volunteer in paying the taxes of Summertime Cafe, Inc.

Plaintiff states that jurisdiction is conferred upon the court by 28 U.S.C., Section 1491, citing *Fidelity & Casualty Co. v. United States*, 490 F.2d 960, 203 Ct.Cl. 486 (1974). The *Fidelity* case, like this case, involved an action for the recovery of amounts tendered by the plaintiff to satisfy the tax liabilities of another party. In that case the court assumed jurisdiction to determine whether the circumstances surrounding the acceptance of the payment in issue created a contract implied in fact even though the plaintiff was not a taxpayer entitled to maintain an action for the overpayment of taxes.[2]

---

1. Under Section 4231(6) of the Internal Revenue Code of 1954, Ch. 33, 68A Stat. 497 (repealed by the Excise Tax Reduction Act of 1965, P.L. 89-44, Title III, § 301, 79 Stat. 136, 145, effective December 31, 1965), a cabaret excise tax was imposed on the receipts of establishments which provided live music or sim-
ilar entertainment. The tax imposed was 10 per cent of the gross receipts during the period in which such entertainment was provided.

2. In order to maintain an action for the refund of taxes under the Internal Revenue Code, the plaintiff must be the taxpayer who has over-

It is the defendant's position that the circumstances surrounding payment in this case do not support any finding of a contract implied in fact. We assume jurisdiction to consider this question. *Cf. J. C. Pitman & Sons, Inc. v. United States*, 317 F.2d 366, 161 Ct.Cl. 701 (1963); *Ralston Steel Corp., Assignee v. United States*, 340 F.2d 663, 169 Ct.Cl. 119, *cert. denied*, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965).

■ In order to consider this question, we first have to examine the voluntariness of plaintiff's payment. In cases involving the payment of tax liabilities by a third party, it is fundamental that the plaintiff cannot recover if the payment in issue was voluntary and the plaintiff bears the burden of proving some element which would remove him from the category of volunteer. In *Fidelity & Casualty Co. v. United States, supra*, we held:

Even viewed in a light most favorable to plaintiff, the actions of IRS in the circumstances surrounding payment of the taxes by plaintiff cannot be considered so overpowering as to have inhibited plaintiff from the unfettered exercise of its reasoned judgment. * * * [203 Ct.Cl. at 497, 490 F.2d at 966.]

 * * * * * *

There are no circumstances in this case whereby a contract implied in fact can be established based on the dealings between IRS and the plaintiff. Plaintiff has failed to carry its burden in this regard, and it must be placed in the fatal category of a volunteer. * * * [203 Ct.Cl. at 498, 490 F.2d at 967.]

See *J. C. Pitman & Sons, Inc. v. United States, supra; Combined Industries, Inc. v. United States*, 15 F.Supp. 349, 83 Ct.Cl. 613 (1936); *Central Aguirre Sugar Co. v. United States*, 2 F.Supp. 538, 77 Ct.Cl. 17 (1933).

■ Plaintiff's main contention appears to be that the deficiencies proposed against Summertime Cafe, Inc., were paid

as the result of duress applied by the Internal Revenue Service. We have considered the question of duress in a wide variety of situations and in *Fruhauf Southwest Garment Co. v. United States*, 111 F.Supp. 945, 951, 126 Ct.Cl. 51, 62 (1953), summarized its conclusions as follows:

* * * three elements are common to all situations where duress has been found to exist. These are: (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. * *

Even if the plaintiff's version of the disputed facts is accepted, we find that none of these elements can be found here.

First of all we find that there is no evidence of the involuntary acceptance of terms dictated by the Internal Revenue Service. Even if the payment in issue was made as the result of Mr. Harrington's alleged statement that Mr. Collins was personally liable for the proposed corporate tax deficiencies, there is no indication that Mr. Collins *involuntarily* accepted these terms. To the contrary we find that Mr. Collins, who could have obtained a copy of the sale agreement at any time from the attorney who prepared the sale agreement, did not produce the document for Mr. Harrington and refused to produce it for Mr. MacDonald. Much has been said of a mistake in this case on plaintiff's part. A copy of the sale agreement would have answered all questions. Ignorance is never sufficient to constitute a ground of relief if it appears that the requisite knowledge might have been obtained by reasonable diligence. *United States v. Ames*, 99 U.S. 35, 47, 25 L.Ed. 295, 301 (1878). He who averts knowledge to himself cannot later claim lack of knowledge. This is elementary. Mr. Collins further testified that he never told Mr. MacDonald that he was in any way

paid his own taxes. See *Economy Plumbing & Heating Co. v. United States*, 470 F.2d 585, 200 Ct.Cl. 31 (1972). In this case the taxpayer was Summertime Cafe, Inc., and there is no claim

here that the amounts paid were not actually due from the corporation. The plaintiff, a nontaxpayer, must establish independent jurisdictional grounds for his action.

reluctant to pay the corporate taxes. In fact, after retaining legal counsel Mr. Collins reaffirmed his willingness to pay the corporate taxes in an affidavit which was signed by both Mr. Collins and his attorney and submitted to Mr. MacDonald prior to the payments in issue. As Mr. Collins testified, he figured that it would be easier to pay the tax than to fight it. Moreover, Mr. Collins' decision to pay the taxes in question may very well have been made in the belief of his liability for the corporate taxes under the contract for the sale of the stock. We hold that the evidence is not sufficient in this case to support a finding that the plaintiff's acquiescence to Mr. Harrington's alleged representation that he was liable for the corporate taxes (even if the payment in issue is found to be the result of such statement) was in any way involuntary. The plaintiff, who averted knowledge to himself as above indicated, cannot claim that his acquiescence was involuntary.

Secondly, contrary to the plaintiff's assertions, other alternatives were available. The payments in issue were made as part of a district conference settlement. If agreement had not been reached at that level, an appellate conference could have been scheduled or a notice of deficiency could have been issued and a petition filed in the United States Tax Court. Mr. Collins' attorney, who handled these cases prior to the payment in issue, was certainly aware of the alternatives to making the payment at the district conference level.

■ The final element essential to a finding of duress is that the circumstances which permitted no other alternative (assuming that this element were otherwise established) were the result of coercive acts of the opposite party. The coercive acts referred to must be of such a nature that they are sufficient to overpower the free will of the plaintiff and to prevent any other course of action. In *Beatty v. United States*, 168 F.Supp. 204, 206–207, 144 Ct.Cl. 203, 206 (1958), we stated as follows:

> A party is always entitled to say that if his offer is not accepted, he will avail himself of his legal rights; it is only the threat of a wrongful or unlawful act that may constitute duress. Such a threat will amount to duress only if it is sufficient to overpower the will of the other party and prevent the free exercise of his will. * * *

See *Fruhauf Southwest Garment Co. v. United States, supra*, 111 F.Supp. at 952, 126 Ct.Cl. at 64.

We hold that the record here is completely devoid of any coercive actions by agents of the Internal Revenue Service. At best the plaintiff has demonstrated only a misrepresentation of law by Mr. Harrington. Where, as here, the plaintiff was represented by tax counsel prior to and at the time of the payment in issue, misrepresentation of law cannot form the basis for a finding of duress. In *Mills v. United States*, 187 Ct.Cl. 696, 700, 410 F.2d 1255, 1257–1258 (1969), we held:

> Even if the plaintiffs could show misrepresentation of law, we could not grant the relief requested. In the absence of unusual circumstances, representations as to questions of law form no basis for setting aside a contract. * * * Ordinarily one having need of legal advice will retain counsel and not take it from the other side of the negotiating table. * * *

■ The lapse of 18 months between the alleged misrepresentation by Mr. Harrington and the payment in issue further negates any inference of urgency or coercion necessary to a finding of duress. If the intervening events—Mr. MacDonald's explanation of the tax consequences of the different types of sales and the retention of and reliance upon tax counsel by Mr. Collins—are considered, the impact of Mr. Harrington's statements are even more attenuated. Even if the payments in issue were made as the result of these statements, as the plaintiff contends, we hold that the statements, at best, constitute merely a misrepresentation of law insufficient to constitute duress under the decisions of this court.

While, in certain cases, actions have been maintained for the recovery of amounts

used to satisfy the liabilities of another person, such instances of recovery have been limited to those cases in which the actions of the agents of the Government are so egregious as to constitute a fraud on the rights of the individual. See *United States v. State Bank of Boston,* 96 U.S. 30, 24 L.Ed. 647 (1877); *Kirkendall v. United States,* 31 F.Supp. 766, 90 Ct.Cl. 606 (1940). Conversely, the facts in this case illustrate not only that no such fraudulent actions occurred, but rather that the actions of the district conferee who accepted the payment in issue were correct and appropriate. It is our opinion that the payments in issue were accepted by Mr. MacDonald from an individual who—

(1) had been informed that questions existed as to his personal liability for the corporate taxes;

(2) had been offered assistance in making a determination as to his own liability;

(3) refused such assistance;

(4) orally stated that he was willing to pay the corporate taxes;

(5) never indicated in any way that he was unwilling to pay the corporate taxes;

(6) retained and relied upon tax counsel prior to making the payment; and

(7) subsequently reaffirmed, in writing, his willingness to pay the corporate taxes under his signature and the signature of his attorney.

Under these circumstances we find that Mr. MacDonald's acceptance and retention of the payment in issue were entirely proper.

■ Plaintiff has argued that the payment in issue is the result of a misrepresentation of law made to an individual who was not represented by counsel.[3] If payment had been made to Mr. Harrington, the original agent, different problems might be presented. However, this is not the case here. Once counsel was retained, any prior misrepresentation is irrelevant. As this court noted in *Mills v. United States, supra,* 410 F.2d at 1258, 187 Ct.Cl. at 700:

\* \* \* Ordinarily one having need of legal advice will retain counsel and not take it from the other side of the negotiating table. \* \* \* The relationship of the parties was not such that it was reasonable for one side to have relied on the representations of the other.

In essence plaintiff, with no reference to legal support whatsoever, is asking this court to hold that a misrepresentation of law made to an individual who was not represented by counsel cannot under any circumstances be remedied by later events. The multiple remedial actions present in this case dictate that the impact of Mr. Harrington's alleged statement was thoroughly dissipated by 18 months of intervening events. As we see this case, Mr. Collins, who could have produced the sale agreement at any time, made a decision that it was easier to pay the corporate taxes than to attempt to work out the question of liability. Having made this decision, Mr. Collins assumed the risk that he was in error as to his legal duty.

■ Subsequently, the plaintiff dealt with Mr. MacDonald to arrive at a figure for the corporate deficiencies with absolutely no indication to Mr. MacDonald that he was unwilling to pay the resulting figure. The failure to convey to Mr. MacDonald any reluctance Mr. Collins might have had is fatal here. Mr. MacDonald was certainly not on notice that Mr. Collins was making the payment in issue on the basis of a misconception of his duty, even if this were

---

3. Although the plaintiff has made no legal argument on this point, several references have been made to a mutual mistake of fact in the plaintiff's brief. The evidence presented does not support this allegation. Mr. MacDonald, the district conferee who received the payment in issue, testified that he did not make a determination that Mr. Collins had sold the assets of the corporation after Mr. Collins declined to produce a copy of the sale agreement and stated that he was willing to pay the corporate taxes. To the contrary, Mr. MacDonald considered Mr. Collins to be making a voluntary payment. Consequently, any mistake made was unilateral in nature. Since Mr. Collins could have rectified this mistake at any time, he must bear the consequences of his inaction.

in fact the case.[4] To hold the Government responsible for the plaintiff's later change of mind would impose an unfair and unwarranted burden. See *J. C. Pitman & Sons, Inc. v. United States, supra.*

 Under these circumstances, no contract implied in fact existed. A contract implied in fact exists only where the circumstances illustrate that the equivalent of mutual assent is present. *Porter v. United States*, 496 F.2d 583, 590–591, 204 Ct.Cl. 355, 366 (1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975). Conversely, a contract implied in law is one in which a duty to make restitution is implied, regardless of the lack of mutual assent, for reasons of justice and equity. 1 Corbin on Contracts, § 19 (2d ed. 1963). There is absolutely no indication of mutual assent in this case. Rather, plaintiff's case is based solely on unproved charges that plaintiff was "coerced" and that this case involved an instance of "IRS high-handedness." Since it cannot be shown that a contract implied in fact existed and since this court's jurisdiction over implied contracts is limited to contracts implied in fact, the plaintiff has presented no claim over which this court can exercise its jurisdiction and the petition is dismissed.

KUNZIG, Judge (dissenting):

In this cabaret excise tax refund suit the majority overturns the recommended decision of Trial Judge Bernhardt and denies plaintiff a recovery for taxes paid to defendant despite the fact that plaintiff was never liable to defendant for the taxes. The primary basis for the majority's holding is that plaintiff paid the tax as a "volunteer" on behalf of Summertime Cafe, Inc., and produced insufficient facts to warrant his recovery on an implied in fact contract because he did not make the tax payments under duress. I agree that plaintiff is not entitled to recover on an implied in fact contract theory in the instant case. However, I differ with the majority on a second phase of the case and would adopt Trial Judge Bernhardt's recommendation that plaintiff has established a right to recover based on section 7422(b) of the Internal Revenue Code of 1954.[1]

According to the majority, in order to maintain an action for the refund of taxes, the plaintiff must "be the taxpayer who has overpaid his own taxes." The court cites *Economy Plumbing and Heating Co. v. United States*, 470 F.2d 585, 200 Ct.Cl. 31 (1972) for this proposition. Undoubtedly, "persons *who are not taxpayers * * * within the system*" have no standing to maintain a refund suit. *Economy Plumbing, supra*, 470 F.2d at 589, 200 Ct.Cl. at 37. However, the majority opinion in the instant case conveniently ignores a crucial determination by the trial judge:

> In contrast to *Economy Plumbing*, the present plaintiff is clearly within the administrative system defined by the court because he was assessed a tax deficiency as a taxpayer, had been formally audited as a taxpayer, paid the tax as a taxpayer, and filed and was denied his refund claim as a taxpayer.

Having treated plaintiff as a taxpayer at each stage of the administrative process, defendant should not now be heard to say that plaintiff is an "outside third party."

Defendant's "nontaxpayer" argument appears even more tenuous when one considers the fact that until the final stages of the administrative process plaintiff appeared *pro se*. Further, the record is totally silent as to any attempts by defendant to

4. A claim founded on a mistake as to a legal duty owed is essentially an action in restitution. Restitution based on a mistake of law is allowable only if the recipient of the funds in issue (1) has notice of the mistake as to legal duty; (2) knows that no such duty is owed; and (3) knows that the transfer was made on the basis of a misconceived duty. See Restatement, Restitution, § 14(1), comment c (1958), and *J. C. Pitman & Sons, Inc. v. United States,* supra. None of these elements are present here. In any event, restitution on this basis is grounded on a contract implied in law over which this court has no jurisdiction.

1. A taxpayer may bring an action for a refund "whether or not such tax * * * has been paid under protest or duress." § 7422(b), Int. Rev.Code of 1954.

recover the tax from the proper party, Summertime Cafe, Inc. I would hold, as did the trial judge, that plaintiff has standing to maintain the present action as a taxpayer.

Clearly, if plaintiff is entitled to bring the instant action as a taxpayer it is irrelevant that he did not pay the tax under duress. § 7422(b), *supra*.

Moreover, although plaintiff cannot recover if he was a volunteer, *Fidelity & Casualty Co. v. United States*, 490 F.2d 960, 967, 203 Ct.Cl. 486, 497 (1974), he need only prove "*some element* which would remove [him] * * * from the fatal category of pure volunteer." *J. C. Pitman & Sons, Inc. v. United States*, 317 F.2d 366, 369, 161 Ct.Cl. 701, 706 (1963). In the case at bar the trial judge correctly found that plaintiff established such an element by showing that both he and defendant operated under a mutual mistake of fact as to the contents of plaintiff's contract to sell Summertime Cafe, Inc. Both parties believed that it provided for a sale of assets (in which case plaintiff would have been liable for the cabaret tax) when in fact it provided for a sale of stock (and plaintiff was not liable for the tax). Therefore, plaintiff was not a volunteer and is able to bring the present action.

Plaintiff had standing as a taxpayer. He was not a volunteer. Accordingly, all plaintiff needed to show in the instant case was that a tax was wrongfully collected from him, a proper refund claim was submitted which was denied by the Internal Revenue Service and a timely action was brought in the present suit. From the record it is apparent that plaintiff has met such prerequisites. I would, therefore, hold for plaintiff.