526 So.2d 934 (1988)
Warren G. McLAUGHLIN, Appellant,
v.
STATE of Florida, DEPARTMENT OF NATURAL RESOURCES, Appellee.
No. 87-949.
District Court of Appeal of Florida, First District.
May 11, 1988.
David J. Busch, Tallahassee, for appellant.
*935 Kenneth J. Plante, Asst. General Counsel, Dept. of Natural Resources, Tallahassee, for appellee.
SHIVERS, Judge.
This is an appeal from a final order rendered by the Public Employees Relations Commission ("PERC") finding that Warren McLaughlin's offer of retirement from the Department of Natural Resources ("DNR") was voluntary. For the reasons that follow, we reverse PERC's decision and remand for further proceedings.
The facts of this case are as follows. Warren G. McLaughlin began employment with DNR's predecessor, the Florida State Board of Conservation, on February 15, 1959. In 1981, he was promoted to Lieutenant and given permanent career service status in that position. In June of 1982, McLaughlin was demoted to Sergeant. McLaughlin filed a timely appeal of his demotion with the Career Service Commission. However, after discussions with his superior, Colonel Ellingsen, McLaughlin agreed to withdraw his appeal with the understanding that he would be reinstated to the rank of Lieutenant effective January 1, 1983. Colonel Ellingsen reduced the agreement to writing in a letter to McLaughlin which read:
This letter will serve to resolve the matter of your reduction in rank and the pending appeal before the Career Service Commission. Upon my receipt of your signed acceptance of this letter, you will be transferred to an Education Officer position with the rank of Lieutenant effective January 1, 1983. Additionally, you will promptly and formally withdraw your appeal in the Career Service Commission.
McLaughlin signed and returned the letter, withdrew his appeal to the Career Service Commission, and was reassigned as an Education Officer.
McLaughlin believed he was being returned to the rank of Lieutenant. His official identification card issued to him in May of 1983, and signed by Colonel Ellingsen and DNR Executive Director Elton Gissendanner, certified him as being a Lieutenant. McLaughlin referred to himself as "Lieutenant", wore a Lieutenant's bar on his uniform and was referred to as "Lieutenant" by his superiors and other agency personnel. Although McLaughlin believed he had been returned to the rank of Lieutenant, Colonel Ellingsen testified that McLaughlin was not actually promoted to the rank of Lieutenant. In the summer of 1984, during a routine conversation with a "real" Lieutenant, McLaughlin learned that he was not, in fact, a Lieutenant. After this conversation, McLaughlin contacted the DNR personnel office and was told that he was carried as a Sergeant. McLaughlin brought the false rank to the attention of State Representative David Thomas, who arranged a meeting with Executive Director Gissendanner.
After the meeting between Thomas and Gissendanner, Gissendanner "brought pressure" upon Colonel Ellingsen to "promote" McLaughlin to the rank of Lieutenant that had been earlier promised. According to Ellingsen, Gissendanner suggested that, in exchange for returning him to the rank of Lieutenant, McLaughlin should provide DNR with a date of retirement. Such a request for retirement in exchange for a promotion was an exception to the standard practice in the agency.
In April of 1985, Colonel Ellingsen offered to make McLaughlin a real Lieutenant, with a two-step pay raise, in exchange for McLaughlin's willingness to transfer to Tallahassee. McLaughlin refused the offer because his transfer would divest a fellow officer of his position in Tallahassee. McLaughlin did not receive the promotion. At a June 5, 1985, meeting with McLaughlin, Colonel Ellingsen proposed that McLaughlin agree to retire in exchange for being returned to the rank of Lieutenant. McLaughlin testified:
Q. What else would you have to do?
A. Retire, give a date of retirement.
Q. Did you do that?
A. Yes, sir.
Q. Why?
A. I felt it was the only way that I could regain the salary that I had lost; and also, I had been operating around as *936 a real Lieutenant. And I felt that the Department owed it to me to be a Lieutenant.
After the meeting, McLaughlin sent the following letter to Colonel Ellingsen:
This letter will serve to inform you of my intended retirement from the Florida Marine Patrol effective March 1, 1987. This retirement date will become a permanent date upon my immediate promotion to the rank of Marine Patrol 2nd Lieutenant and with a salary increase of two steps on the present Lieutenant Step Pay Schedule.
On June 28, 1985, McLaughlin was returned to the rank of Lieutenant.
On January 8, 1987, McLaughlin sent a letter to Colonel Ellingsen informing Ellingsen that he would not be retiring from the Florida Marine Patrol on March 1, 1987, as previously indicated. However, Ellingsen informed McLaughlin that the retirement date of March 1, 1987, had been accepted and that McLaughlin would be expected to retire on that date. On February 16, 1987, McLaughlin filed a notice of appeal with PERC. DNR moved to dismiss the appeal, and PERC referred the motion to a Hearing Officer for ruling. A hearing was held before Hearing Officer Cheatham on March 4, 1987. On March 25, 1987, the Hearing Officer found that McLaughlin voluntarily resigned his employment with DNR in order to retire, and he recommended that the appeal be dismissed. On June 17, 1987, PERC entered its final order finding that McLaughlin's offer to retire was voluntary.
Absent evidence to the contrary, retirement or resignation is presumed to be a voluntary act. Covington v. Dept. of Health and Human Services, 750 F.2d 937, 941 (Fed. Cir.1984). "A voluntary act is an act proceeding from one's own choice or full consent unimpelled by another's influence." Paroczay v. Hodges, 219 F. Supp. 89, 93-94 (D.D.C. 1963). However, an action cannot be voluntary if it is performed as a result of duress. City of Miami v. Kory, 394 So.2d 494 (Fla. 3d DCA), rev. denied, 407 So.2d 1104 (Fla. 1981). "Duress involves a step beyond mere illegality and implies that a person has been unlawfully constrained or compelled by another to perform an act under circumstances which prevent the exercise of free will." Fruhauf Southwest Garment Co. v. United States, 111 F. Supp. 945, 952, 126 Ct.Cl. 51 (1953). In order to show duress, a plaintiff must show (1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that said circumstances were the result of coercive acts of the opposite party. See United States v. Thompson, 749 F.2d 189, 194 (5th Cir.1984); Jamestown Farmers Elevator, Inc. v. General Mills, Inc., 552 F.2d 1285, 1290 (8th Cir.1977); Business Incentives Co., Inc. v. Sony Corporation of America, 397 F. Supp. 63, 69 (S.D.N.Y. 1975); Hearne v. United States, 7 Cl. Ct. 362, 367 (1985). The plaintiff bears the burden of creating a fact issue with respect to a claim of duress. However, duress is not measured by a plaintiff's subjective evaluation of a situation; rather, a plaintiff must tender objective evidence that the retirement or resignation was the product of duress. United States v. Thompson, 749 F.2d at 194; Christie v. United States, 518 F.2d 584, 587, 207 Ct.Cl. 333 (1975).
In Florida, the Third District Court of Appeal has reviewed a plaintiff's claim of duress in an employment situation. City of Miami v. Kory, 394 So.2d 494 (Fla. 3d DCA), rev. denied, 407 So.2d 1104 (Fla. 1981). The plaintiff, Ms. Kory, was hired by the City with the understanding that, under the civil service rules, she was subject to being fired without cause during her probationary period. On the last day of her probationary period, her supervisor sent her a memo indicating his intention to terminate her later that day. Because she knew that she would be precluded from further city employment if she was fired, Ms. Kory submitted her resignation instead. She then discovered her supervisor had no authority to terminate her, and she sued the city contending that her resignation was the product of duress created by the supervisor's invalid notice of termination. The appellate court found that Ms. *937 Kory's actions were voluntary and not the result of duress. First, the court found that Ms. Kory's resignation was initiated by her and that her course of action was entirely volitional, as no one pressured her to resign. Second, the court found that the city's conduct was neither improper nor illegal because the city had every right to terminate Ms. Kory without any cause whatsoever. Third, the court found that Ms. Kory's supervisor acted entirely in good faith even though he did not have the authority to act. Finally, the court found that the threatened termination did not constitute duress because Ms. Kory had adequate legal remedies available with which to challenge the threatened termination. The court found that what Ms. Kory should have done "was let herself be improperly fired and then inevitably win the subsequent lawsuit." Id. at 499. A review of the opinion establishes that Ms. Kory failed to satisfy any element of the three-part test to establish duress.
In the instant case, a review of the three elements of duress reveals that McLaughlin's agreement to retire was involuntary and the result of duress. The first element of the test, whether one side involuntarily accepts the terms of another, is established if it is determined that the "defendant initiate[d] and essentially control[led] the submission of resignation." Hearne v. United States, 7 Cl. Ct. at 367. In Kory, the court determined that Ms. Kory's resignation was initiated entirely by her. In the instant matter, however, competent substantial evidence supports PERC's finding that DNR was the party who first proposed McLaughlin's retirement. McLaughlin merely requested the promotion to the rank of Lieutenant that was promised to him in 1982. DNR was the party that proposed to make McLaughlin's promotion contingent upon the offer of a retirement date.
Additionally, the third element of the test, whether the plaintiff's actions were the result of coercive acts of the opposite party, can be determined by looking at the propriety of the acts of the opposite party. "An action is not voluntary if it is produced by government conduct which is wrongful." Roskos v. United States, 549 F.2d 1386, 1389-90, 213 Ct.Cl. 34 (1977). In order to establish duress, a plaintiff must prove "a wrongful act by the defendants to create and take advantage of an untenable situation." Chouinard v. Chouinard, 568 F.2d 430, 435 (5th Cir.1978). Unlike the Kory court's finding that the city's conduct was neither improper nor illegal, we find that DNR intentionally reneged on a promise to an employee. DNR's actions in failing to promote McLaughlin as promised were highly improper and presented a coercive environment. Thus, two parts of the three-part test for establishing the existence of duress can be easily determined from the record.
The last element of the test which must be shown is whether the circumstances permitted no other alternative. McLaughlin contends that he would not have received the promotion that was due to him unless he agreed to a date of retirement. DNR contends, however, that once McLaughlin realized that his rank was improperly withheld, he had a cause of action in circuit court to enforce the conditions of the 1982 agreement in which DNR agreed to reinstate McLaughlin to the rank of Lieutenant in exchange for McLaughlin's dismissal of his appeal to the Career Service Commission. DNR argues that because this alternative existed, McLaughlin's action in giving a date of retirement was not involuntary.
Although it appears from the case law that the existence of other alternatives negates the implication of duress, courts have based decisions in this area on the plaintiff's knowledge of the other available alternatives. In many cases, a reasonable alternative existed due to the circumstances of the particular case. For instance, many courts have reviewed the voluntariness of a plaintiff's action taken in response to certain threatened government or employer action. In those cases, duress is not a defense because the plaintiff's "defense of the threatened action is often a reasonable alternative" to the action taken by the particular plaintiff. Morrell v. Stone, 638 F. Supp. 163, 167 (W.D.Va. 1986) (quoting Jurgensen v. Fairfax County, *938 Virginia, 745 F.2d 868, 890 (4th Cir.1984)). In such a situation, the courts will presume a plaintiff's knowledge of the alternative. See Christie v. United States, 518 F.2d at 587, 207 Ct.Cl. 333. Thus, where a plaintiff takes certain action in lieu of contesting threatened action by the government or his employer, the plaintiff's action is always presumed to be knowingly voluntary. See Jurgensen v. Fairfax County, Virginia, 745 F.2d at 890 (rather than accept a demotion, plaintiff had the alternative of contesting his employer's threat of dismissal for cause); Collins v. United States, 532 F.2d 1344, 1349, 209 Ct.Cl. 413 (1976) (rather than pay certain taxes as requested by the IRS, plaintiff had the alternative of protesting a later notice of deficiency in the United States Tax Court); Johnson, Drake & Piper, Inc. v. United States, 531 F.2d 1037, 1043, 209 Ct.Cl. 313 (1976) (rather than sign a release of all claims for extension of time against the government, plaintiff had the alternative of contesting the government's threatened default termination); Christie v. United States, 518 F.2d at 587, 207 Ct.Cl. 333 (rather than resign, plaintiff had the alternative of challenging the threatened termination for cause); Hearne v. United States, 7 Cl. Ct. at 369 (rather than resign from his employment in return for a dismissal of criminal charges, plaintiff had the alternative of fighting the criminal charges in court); Benton v. United States, 6 Cl. Ct. 781 (1984) (rather than submit an application for disqualification from Aviation Service in lieu of Board action, plaintiff had the alternative of contesting the Board's proposed action to disqualify him as a pilot).
In other cases which hold that alternatives were available to a plaintiff, courts have emphasized the plaintiff's knowledge, actual or constructive, of rules promulgated by the employer for the employee's benefit and protection. In Morrell v. Stone, plaintiff, a police officer, was presented with the choice of resigning voluntarily in lieu of being dismissed for cause. On appeal, plaintiff challenged the voluntariness of his resignation. The district court found that plaintiff's resignation was voluntary and not the product of duress. In its analysis, the court noted that alternatives other than resignation were available to plaintiff and that plaintiff was aware of these other alternatives.
[P]laintiff could have chosen to challenge through the grievance procedure made available to him under .. . the "Law Enforcement Officers' Procedural Guarantees" any adverse disciplinary action taken against him by the defendants... . He has admitted in his deposition testimony that he received the written memorandum ... noting that the matter would be handled pursuant to the "Law Enforcement Officers' Procedural Guarantees" of the Virginia Code. Moreover, plaintiff has admitted that he talked with his attorney before making the decision to submit his resignation.
638 F. Supp. at 167-168. Similarly, in Jurgensen v. Fairfax County, Virginia, the court's finding that plaintiff's voluntary acceptance of a demotion was not the result of duress was based, in part, on the fact that plaintiff could have pursued an administrative remedy under the Civil Service procedures. "[T]he plaintiff testified that he was thoroughly familiar with his rights under the Civil Service procedures. He had a right to seek relief under administrative proceedings provided under the Civil Service Act... . The plaintiff had a plain administrative remedy... ." 745 F.2d at 890. See also O'Hanlon v. United States, 11 Cl. Ct. 192, 199 (1986) (alternatives were available to plaintiff under pertinent Army Regulations and plaintiff, as a military officer with 15 years of service who dealt with administrative matters on a routine basis, was held to have constructive or presumed knowledge of these regulations).
Other courts have noted a plaintiff's actual knowledge of other alternatives in concluding that action taken by a plaintiff is voluntary. In Zelman v. Cook, 616 F. Supp. 1121 (S.D.Fla. 1985), the court held that the plaintiff failed to establish duress because he failed to show that the circumstances permitted no other alternative than to sign a release. The court emphasized that the plaintiff was aware of other alternatives but chose instead to sign the release.
[H]e had present counsel at his disposal who advised him that a lawsuit "could be *939 successful." He simply chose not to sue because of the time and expense involved in litigation. Thus, the plaintiff knew that he did have an alternative which would have provided him with an adequate remedy.
Id. at 1133. Similarly, the court in Collins v. United States found that alternatives to tax settlement were available to the plaintiff. The court emphasized plaintiff's knowledge, through his attorney, of these alternatives.
[A]n appellate conference could have been scheduled or a notice of deficiency could have been issued and a petition filed in the United States Tax Court. Mr. Collins' attorney, who handled these cases prior to the payment in issue, was certainly aware of the alternatives to making the payment at the district conference level.
532 F.2d at 1349, 209 Ct.Cl. 413.
Although a plaintiff should not be able to purposely avoid knowledge and then claim his "uninformed" decision was involuntary, neither should a plaintiff be required, in every instance, to seek legal counsel for advice as to whether an alternative exists to an action which is about to be taken. Of course, if an employer threatens or proposes to take certain action against an employee, the alternative of opposing or defending against the action is always available to the plaintiff. Additionally, an employee may reasonably be held to have constructive knowledge of agency rules available to contest or appeal certain actions. Finally, if an employee is personally aware of reasonable alternatives, no duress exists to make the action actually taken involuntary.
In the instant case, DNR wrongfully withheld McLaughlin's promotion to Lieutenant. When confronted with this fact, DNR offered to make McLaughlin a "real" Lieutenant if he would transfer to another city. When McLaughlin refused the transfer, his superiors revoked the offer of promotion to Lieutenant. Subsequently, DNR proposed to reinstate McLaughlin to the rank of Lieutenant if he would submit a date of retirement. DNR contends that McLaughlin provided a date of retirement voluntarily and that no duress existed because he had an alternative to providing the date of retirement. DNR contends that once McLaughlin realized he was not a "real" Lieutenant, he should have brought an action in circuit court to enforce the settlement agreement entered into in 1982 in which DNR agreed to reinstate McLaughlin to the rank of Lieutenant. However, the evidence does not reveal that McLaughlin had actual or constructive knowledge of this so-called alternative. Neither does the evidence reveal that McLaughlin intentionally avoided learning of this possible alternative. He was not represented by an attorney, and such a remedy did not exist at the agency level. Indeed, at the time McLaughlin realized that DNR had reneged on its promise, no agency rules existed to provide McLaughlin with agency review of DNR's action. Section 447.207(8), (9) and (10), Florida Statutes (1987) provides that PERC shall only hear appeals "arising out of any suspension, reduction in pay, transfer, layoff, demotion, or dismissal of any permanent employee in the State Career Service System." Finally, this case is not a situation in which a plaintiff can oppose or defend an agency's or employer's threatened action against the plaintiff. Thus, the "alternative" of defending an action brought against a plaintiff does not exist in this case.
For the reasons stated above, it is not reasonable to expect McLaughlin to be aware of possible alternatives to submitting a date of retirement. "[W]hether the employee made an informed choice is the touchstone of our analysis." Covington v. Dept. of Health and Human Services, 750 F.2d 937, 942 (Fed. Cir.1984). In this case, knowledge of the proposed alternative of seeking enforcement of the prior agreement cannot reasonably be implied to McLaughlin. "[A] choice between two alternatives ... must be understood by the employee and ... such a decision [must] be freely made. A decision ... based on ... a lack of information cannot be binding as a matter of fundamental fairness and due process." Id. at 943.
Whether duress exists to make a decision involuntary depends upon the circumstances of each individual case. Urban Plumbing *940 & Heating Co. v. United States, 408 F.2d 382, 389, 187 Ct.Cl. 15 (1969), cert. denied, 398 U.S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (1970). In this case, the three elements necessary for a finding of duress are present.
We conclude that DNR's dismissal of McLaughlin, through the action of involuntary retirement, was wrongful and not based upon just cause. Section 447.208(3)(b), Florida Statutes (1987) states that "[u]pon a finding that just cause did not exist for the suspension or dismissal, the commission may order the reinstatement of the employee, with or without back pay." Subsection (e) states that:
Any order of the commission issued pursuant to this subsection may include back pay, if applicable, and an amount, to be determined by the commission and paid by the agency, for reasonable attorney's fees, witness fees, and other out-of-pocket expenses incurred during the prosecution of an appeal against an agency in which the commission sustains the employee.
Accordingly, this action is remanded to PERC for a determination consistent with this opinion pursuant to Section 447.208(3)(b) and (e), Florida Statutes (1987).
REVERSED and REMANDED.
MILLS and JOANOS, JJ., concur.