JOHNSON, Judge.
This is an appeal from a final decree in which the temporary injunction previously entered as to two streets — railroad crossings in the City of Hawthorne, was made permanent as to one crossing and dissolved as to the other.
Briefly stated the facts are: U.S. Highway 301 had recently been rerouted through Hawthorne so as to parallel the Seaboard Air Line Railroad tracks. Lake Street, in Hawthorne, intersected U.S. Highway 301 and provided access from U.S. Highway 301 to the center of town and provided a direct route for transportation of school children from the east side of town to the school premises located on the west side of town. Shortly after leaving U.S. 301 Lake Street intersects Seaboard Air Line Railroad tracks, and this is the primary crossing in controversy in this appeal. A similar crossing at Myrtle Street is also involved via of cross-assignment of error.
The City of Hawthorne had adopted as an emergency measure a city ordinance identified by the Number 185, requiring the Railroad Company, at the Myrtle Avenue and Lake Street crossings, to flag said crossings by maintaining a flagman at each crossing, by safety gates or electrically lighted signals or by stopping the trains at each crossing and having a flagman precede the trains through the crossings. A maximum speed of 30 miles per hour was also fixed by said Ordinance.
Shortly after the adoption of said Ordinance, the Railroad Company filed suit for injunction against the appellee City against enforcement of said Ordinance on the grounds, that same was arbitrary and unreasonable, placed an unreasonable burden oh the appellant’s interstate commerce and violated the constitutional and property rights of the railroad. A temporary injunction was issued and the matter set for hearing. At final hearing, the cost to the appellant of the signal lights was emphasized as an item to be taken into consideration with the contention that since the Railroad had not brought about the changed condition created by the rerouting of U.S. 301, that the City or the public should defray the costs of such signals.
It will serve no good purpose to further detail herein the evidence adduced at the trial of the issues, but suffice it to say that *244 the trial judge found and included in his findings of fact, the location of U.S. 301 and the railroad and the two street crossings to be as outlined supra; further, that Lake Street provided access to the center of town and to the school buildings on western part of town; and that a curvature of the tracks impaired visibility; that a team track parallel to the main track was at a different elevation and confusing to approach and that visibility was further impaired by box cars spotted on the team track. Also, buildings on the south side of Lake Street and west of the tracks obstructed visibility. The court did not find this type of damages to exist as to the Myrtle Avenue crossing.
Based upon such findings the trial court dissolved the injunction as to Lake Street crossing, holding the Ordinance 185 to be valid as thereto, and extending the injunction permanently as to the Myrtle Avenue crossing. Also, the court enjoined the appellant from operating its trains through Hawthorne at a speed in excess of 30 miles per hour. Hence this appeal and cross appeal.
The appellant’s sole contention is that the Ordinance in question is an unreasonable exercise of the City’s police power and is arbitrary and confiscatory.
The City Charter of the appellee provides, inter alia, that the City shall have the power and authority to “regulate the use of highways, * * *, to prevent the obstruction of water ways * * * streets and highways; * * * to abolish and prevent grade crossings over the same by railroads; to regulate the operation and speed * * * of trains.”
Considerable testimony was taken by the trial court, including the item of cost of installing and maintaining electric stop signals. Also, there was testimony to the effect that the State Road Department recognized that its construction program often created the damages at grade crossings and that by reason thereof the State Road Department bore the cost of installation of the signals deemed necessary for the public safety.
The appellant cites many cases in support of its contention that the cost of complying with said Ordinance should not be borne by the appellant but by the public. We do not find any fault with the decisions so cited, but we note that in said cases, all of them dealt with specific sets of facts applicable only to the determination made by the court as to such facts. We recognize also that there has been a change in economic conditions since the dates of the early railroad because of the influx of the modern automobile transportation, but we are still cognizant of the fact that where human lives, and especially that of school children, are at stake, as distinguished from the purely commercial factor of competing transportation facilities, the courts have a wider latitude within which to travel. As in the case sub judice, the trial court found the crossing at Lake Street to be unique by reason of certain factual conditions existing, which taken in the conglomerate, rendered said crossing extremely dangerous. At the same time the trial court found in substance that such a situation did not exist with reference to Myrtle Avenue crossing.
It is apparent from the testimony of experts produced by the appellant, that there is no fixed policy as to distribution of costs of signals between the railroads and state-federal agencies, but that same vary according to agreements and circumstances peculiar to the particular crossing.
The trial court determined that the Ordinance was not unreasonable on its face and cited in support thereof Weeks v. Welch.[1] Also, taking into consideration all the elements involved in this matter, the safety to the public, the costs, the ability to pay, and the joint benefits to be re *245 ceived by all parties, the public and the railroad, the trial court, we think correctly entered its order dissolving the injunction as to the Lake Street crossing, as well as in making permanent its injunction as to the Myrtle Avenue crossing. We do not find any error in assessing the costs. Progress calls for extensions of obligations on the part of the general public as well as on the railroads and when a city exercises power granted it by the Legislature, found to be reasonable and valid, the courts will support the enforcement of such powers as the exigence of the particular situation demands.
For the reasons stated the order appealed is Affirmed.
Affirmed.
CARROLL, DONALD K., Acting C. J., and SPECTOR, J., concur.

. Weeks v. Welch, 92 So.2d 645 (Fla.1957).