453 So.2d 1134 (1984)
E. Lamar BAILEY, Appellant,
v.
Jimmy CHRISTO, Appellee.
No. AY-94.
District Court of Appeal of Florida, First District.
June 29, 1984.
Rehearing Denied September 4, 1984.
*1135 Clinton E. Foster, P.A., Panama City, for appellant.
Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, and Carroll L. McCauley, Panama City, for appellee.
ZEHMER, Judge.
E. Lamar Bailey appeals a nonfinal order for preliminary injunction which requires, among other things, that Bailey open and operate the Spinnaker II nightclub in Panama City and pay to himself and to appellee Christo, who claims to be a co-owner of the business, stipulated percentages of gross revenues derived from the operation of the nightclub during the March to September 1984 season. Bailey contends that the trial court abused its discretion in directing him to operate the business with his own funds and to pay a percentage of gross revenues monthly to the owners before resolution of the disputed rights of the parties and before determination of the ultimate amount of profit that will be earned by the business operation during the season. We hold that appellant has failed to demonstrate an abuse of discretion requiring this court to intervene in the trial court's handling of this litigation, and affirm.
For a number of years, Bailey and Jimmy Christo have been co-owners of a nightclub business called Spinnaker II. The club is located on Panama City Beach and operates during the local season, which extends from March to September. Christo has managed the nightclub for a number of years, and that apparently is his principal source of income. Bailey had not been active in operating the club until this dispute arose. During the 1983 season, Bailey and Christo developed substantial differences of opinion concerning the operation of the club and the use of its revenues. Finally, in October 1983, Bailey physically took possession of the premises, inventoried and shipped the physical assets to a warehouse for storage, erected a fence around the club building, locked the gate, and posted a guard with instructions to keep all persons, including Christo, off the premises.
In response to Bailey's actions, Christo filed this lawsuit claiming to be a fifty percent owner in Funtana Village, Inc., the corporation that owned the premises and the alcoholic beverage license under which the nightclub operated. Christo's complaint alleged that Bailey's actions in taking possession of the club have wrongfully deprived him of his legal rights and prayed for declaratory judgment, injunctive relief, and damages. Bailey answered, claiming to be owner of record of one hundred percent *1136 of the stock of Funtana Village, Inc., but admitting that Christo is a fifty percent owner of a partnership that has operated the club during prior years. Bailey counterclaimed for damages from Christo for his misuse of Spinnaker II partnership funds derived from the operation of the club during 1983.
On November 27, 1983, Bailey filed a motion for temporary restraining order and preliminary injunction to prohibit Christo from entering upon the property. On December 1, 1983, the trial court held an extensive evidentiary hearing on Bailey's motion, during which both Christo and Bailey gave testimony concerning their respective claims of interest in the Spinnaker II, its value, and the profitability of the operation. That hearing was continued to December 15, when additional evidence was received by the court. No ruling was immediately issued, however, and on February 1, 1984, Christo filed a motion for preliminary injunction to compel Bailey to return the Spinnaker II's personal property and permit Christo to reopen the nightclub and resume his duties as manager during the rapidly approaching season. On February 10, at a hearing on Christo's motion, both Bailey and Christo made additional statements to the court. Bailey had previously testified that the Spinnaker II should realize profits of $700,000 to $1,000,000 per year if managed properly. He admitted that Christo was a fifty percent partner in the operation of the nightclub. When it became apparent during the course of the hearing that the trial court was contemplating an order that the club should be reopened under Christo's management, Bailey, in response to a specific inquiry by the trial judge, stated that he would be willing to reopen the nightclub and operate it himself.
On March 5, 1984, the court entered the order here appealed. Although purporting to grant Bailey's motion for preliminary injunction and deny Christo's motion, the order granted some relief to each party. It enjoined Christo from interfering in Bailey's possession or operation of the Spinnaker II, mutually enjoined both parties from harassing, threatening, or otherwise interfering with the private rights of each other, required Bailey to post a $500 bond, and ordered Bailey to open and operate the Spinnaker II during the coming season "consistent with past practices." The order also directed that certain accountants be engaged to account for the revenues and expenditures of the club operation by Bailey, directed that Christo be allowed on the premises during business hours (apparently for the purpose of taking advantage of the goodwill he had generated in prior years through his personal management of the business), and directed that both Bailey and Christo be paid stipulated percentages from the gross revenues of the operation on a monthly basis. It is apparent to us that the trial court was endeavoring to restore the status quo as much as possible while protecting Bailey from Christo's alleged misuse of funds by permitting Bailey to operate the business and maintain personal control over the funds, subject to indirect court supervision through appointed accountants.
Bailey contends that the trial court erred in two respects in entering the injunction. First, there were no pleadings before the trial court requesting that Bailey open and operate the club. Second, there was no testimony or evidence taken by the trial court in direct support of a requirement that Bailey operate the club, other than that received December 1 and 15 concerning Bailey's motion to restrain Christo from entering upon the premises.
Our consideration of Bailey's objections must be made within the framework of certain general principles. The trial court has wide discretion to grant, deny, or modify injunctions, and an appellate court will not interfere with the exercise of this discretion unless some abuse thereof is clearly made to appear; and a presumption exists as to the correctness of a trial court's ruling, with the burden on the appellant to prove such abuse. Duvallon v. Duvallon, 409 So.2d 1162 (Fla. 3d DCA 1982). The purpose of a temporary *1137 injunction is to preserve the status quo until a final hearing may be held and the dispute resolved. City of Miami Springs v. Steffen, 423 So.2d 930 (Fla. 3d DCA 1983). The status quo preserved by a temporary injunction is the last peaceable noncontested condition that preceded the controversy. Bowling v. National Convoy & Trucking Co., 135 So. 541 (Fla. 1931). One critical purpose of temporary injunctions is to prevent injury so that a party will not be forced to seek redress for damages after they have occurred. Lewis v. Peters, 66 So.2d 489 (Fla. 1953). The granting of a temporary injunction rests in the trial court's sound judicial discretion, guided by established rules and principles of equity jurisprudence in view of the facts of the particular case. Decumbe v. Smith, 143 Fla. 5, 196 So. 595 (Fla. 1940). A temporary mandatory injunction pending final hearing, though not usually granted, may be granted if the totality of circumstances warrant. Zetrouer v. Zetrouer, 89 Fla. 253, 103 So. 625 (Fla. 1925).
Regarding Bailey's first contention, it must be remembered that this action was initiated by Christo's filing a complaint for the purpose of establishing his ownership and right to possession of the club operated by him. Among other things, he sought injunctive relief prohibiting Bailey from interfering with operation of the club. By February, Christo had filed a motion for preliminary injunction to compel Bailey to return possession of the premises so that Christo could open and manage the club during the coming season. Even though the hearing on December 1 and 15 was ostensibly in connection with Bailey's motion to keep Christo off the premises, the issue of who owned the club and had the right to possession was necessarily involved in that hearing. At the time the appealed order was entered, the pleadings squarely presented the question whether the club should be operated during the approaching 1984 season by Christo or by someone else. The trial judge was not bound to limit his consideration to whether Christo alone should operate the club and simply deny Christo's motion if that relief was not granted; the trial court had broad discretion to fashion an appropriate remedy in equity. Since Bailey perceived during the hearing in February that the court was going to require that the club be operated by someone, and being fearful that that someone might be Christo, Bailey offered to operate it himself. Accordingly, he will not now be heard to complain that the issue was not properly before the court for lack of specificity in the pleadings.
Regarding his second point, Bailey argues that substantially all of the testimony relied on by the trial court was received on December 1 and 15 in connection with Bailey's motion to restrain Christo from entering the premises. Thus, Bailey contends, there was no evidence received by the court directly in support of the injunction ordered by the court and, therefore, the order cannot stand. We disagree.
At the time of the hearing on Bailey's motion to enjoin Christo, issues had been raised by Christo's pleadings concerning his right to possess the premises. Resolution of Bailey's demand to keep Christo off the premises was necessarily interrelated with Christo's right to possession of the premises by reason of his ownership interest and past operation of the club. Hence, it was readily foreseeable that the evidence taken on December 1 and 15 would, as it did, relate primarily to the ownership and operating requirements of the business. When Christo brought the issue squarely in focus with his February 1 motion to open and operate the club, the trial court was entitled to consider relevant evidence received at the December hearings, as well as any additional evidence that might be offered by the parties at the February 10 hearing, in support of Christo's motion. We find no error in the trial court's having done so.
Bailey's chief concern centers around the provision in the injunctive order requiring that certain percentages of gross revenues, ranging from five to ten percent, be paid each month to Bailey and Christo. The record reflects that the trial court *1138 predicated this requirement entirely upon Bailey's testimony regarding anticipated profits and upon the court's recognition of Christo's dependency on the operation of the club for his primary source of income. The trial court, exercising its power to achieve equity and justice to both parties, explicitly found it is in the parties' best interest that the Spinnaker II be operated during the coming season. It is apparent that the trial judge was concerned primarily with preserving the status quo during this litigation by enjoining Bailey from forcibly closing down the Spinnaker II. With certain exceptions, the judge required the continued operation of the club during the pendency of this litigation on a basis "consistent with past practices." Instead of allowing Christo to operate and manage the club and make monthly draws out of the income, as he had in the past, the trial court recognized Bailey's objection to leaving Christo in charge and allowed Bailey to operate the club even though it was Bailey who upset the status quo by taking possession of the premises through self-help and deprived Christo of the ability to operate the club and earn his livelihood. The trial court's requirement that a percentage of gross revenues be distributed monthly is supported by competent, substantial evidence, and we find no basis for holding that the trial court abused its discretion in this regard.
Bailey has filed motions with the trial court and with this court suggesting that material changes in circumstances have occurred since the entry of the order here appealed that make it unfair, if not impossible, for Bailey to comply with the injunction. We have not considered such circumstances in arriving at this decision, which is based solely upon the record before the trial court at the time the appealed injunctive order was entered. This decision is without prejudice to the trial court's consideration of any applications to modify or vacate the appealed order based upon competent evidence of changed circumstances.
AFFIRMED.
BOOTH and WENTWORTH, JJ., concur.