# BROWN v DUVAL COUNTY MEDICAL SOCIETY
## Case No. 88-15422-CA
Fourth Judicial Circuit, Duval County

November 14, 1988

### APPEARANCES OF COUNSEL

**Roy Lewis,** for plaintiff, Robert C. Brown, Jr., M.D.

**Lamar Wineheart, III,** Mahoney Adams Milan Surface & Grimsley, P.A., for defendant, Duval County Medical Society.

### OPINION OF THE COURT

MAJOR B. HARDING, Circuit Judge.

### ORDER GRANTING DEFENDANT'S MOTION TO DISSOLVE TEMPORARY INJUNCTION

This cause came before the Court for hearing on the defendant's motion to dissolve the temporary injunction previously entered by this Court on October 11, 1988. Having heard the evidence and the arguments of the parties, the Court is of the opinion that the defendant's motion is well taken, and that the temporary injunction should

be dissolved. The Court's opinion and order is based upon the following findings of fact and conclusions of law.

*Findings of Fact*

On October 3, 1988, the plaintiff Robert C. Brown, Jr., M.D., received a hand delivered letter from the defendant Duval County Medical Society ("DMCS"). [Plaintiff's Exhibit "1"; Exhibit "A" to Plaintiff's Motion for Temporary Injunction]. The letter was signed by Jack L. Sapolsky, M.D., as Chairman of the DCMS's Judicial Committee ("the Committee"). The letter informed Dr. Brown that the Judicial Committee was reviewing his care of a particular patient, and requested his attendance at a meeting scheduled for 5:30 p.m. on October 11, 1988, some eight days later.

On October 10, 1988, counsel for Dr. Brown contacted Dr. Sapolsky by telephone to discuss the situation. Dr. Sapolsky declined to specify for Dr. Brown's counsel the nature of the complaint against Dr. Brown. Dr. Sapolsky informed counsel that the meeting would be informal, that it would involve the three members of the Committee and two physicians practicing within Dr. Brown's area of specialty (obstetrics and gynecology), and that the presence of counsel and the presentation of witnesses on Dr. Brown's behalf would be inappropriate. Dr. Sapolsky explained that the meeting was informal and that its purpose was purely to discuss the case with Dr. Brown as a means of factual investigation.

On October 11, 1988, Dr. Brown, through his counsel, filed a motion with this Court seeking a temporary injunction preventing the DCMS from conducting any investigation concerning Dr. Brown's handling of the particular patient at issue. Dr. Brown's motion was sworn to in accordance with Fla. R. Civ. P. 1.610. Although the motion sought a temporary injunction without notice to the defendant, the Court contacted by telephone William S. Burns, Jr., as counsel for the defendant, to discuss the defendant's position with respect to the injunction. After the Court heard from defense counsel, the Court determined that based upon the record before it, the injunction should issue.

On November 2, 1988, the DCMS filed a motion to dissolve the temporary injunction, together with an affidavit signed by Dr. Sapolsky in support of the defendant's motion. At defense counsel's request, the court scheduled a hearing on the Motion to Dissolve for November 8, 1988, within the five days prescribed by Fla. R. Civ. P. 1.610(d).

At the hearing on the motion to dissolve, the court heard testimony

**57**

from Dr. Sapolsky as to the procedures employed by the DCMS Judicial Committee in cases such as that involving Dr. Brown, as well as the specific handling of Dr. Brown's case. As explained by Dr. Sapolsky, the DCMS is a component local organization of the Florida Medical Association ("FMA"). When the FMA receives a complaint against a physician, its normal practice is to refer the complaint to the local medical society within the physician's geographical area for initial investigation. When the DCMS receives such a referral from the FMA, as it did in this case, the referral is routed to the DCMS's Judicial Committee, a three-member body composed of each of the three immediate past presidents of the DCMS. The Committee examines the complaint and determines whether, using the expertise and specialization of the Committee members, it can address the complaint without outside consultation. In this case, that was not advisable, since Dr. Sapolsky is a urologist and the other two members of the Committee—Dr. Charles Hayes and Dr. Will Dawkins—practice internal medicine. Thus, in accordance with normal Committee procedures, Dr. Sapolsky transmitted the complaint to two other physicians chosen by Dr. Sapolsky, each of whom specializes in obstetrics and gynecology, for their review. Dr. Sapolsky testified that he deliberately chose the Committee's two consulting physicians in this case so that neither would have had substantial contact or practice with Dr. Brown.

Following the initial review of the complaint letter by the Committee members and the two consultants, Dr. Brown received his invitation to the meeting to be held on October 11, 1988. Dr. Sapolsky testified that this was the normal practice of the Judicial Committee in cases such as Dr. Brown's. In accordance with normal Committee procedures, Dr. Brown was told the name of the patient involved, but was not given a copy of the complaint letter in advance of the meeting.

As Dr. Sapolsky testified, the Committee does not provide the physician with an advance copy of the complaint letter due to concerns over confidentiality. Dr. Sapolsky also explained, however, that once the physician attends the informal conference, at which he does receive a copy of the complaint, the physician is allowed any reasonable number of follow up conferences with the Committee and the consultants in order to explain all facts and circumstances relevant to the particular case.

As a general rule, the only persons in attendance at the informal conference would be the members of the Committee, its consultants, and the physician involved. However, Dr. Sapolsky also testified that if a physician were to request that his counsel or another doctor within his specialty area be allowed to be present at the Committee meeting,

58

simply to observe the process, Dr. Sapolsky as Committee Chairman would probably allow that, within the exercise of his discretion and on a case by case basis.

Following the informal conference (or series of conferences, as the case may be), the Committee forms an opinion as to what further handling the case should receive. The Committee's consensus is then reported back to the DCMS's referral source, which would be the FMA in a case such as Dr. Brown's.

If the Committee concludes that there appears to be no cause for further investigation, it so reports to the FMA. If on the other hand the Committee concludes that reasonable grounds exist for an investigation into whether the physician has violated state law or state regulations, that is reported to the FMA as well. In such a case, the FMA would then refer the matter on to the Florida Department of Professional Regulation ("DPR") for its investigation and review. In matters referred for DPR investigation, the DCMS takes no further action pending resolution of any investigation the DPR sees fit to undertake.

Finally, if the Committee concludes that no grounds exist to believe that state law is implicated, but that the case may present a potential violation of the DCMS's own by-laws, the matter is then handled in accordance with the DCMS's own internal procedures set forth in Section 108.0 of its by-laws. Under those procedures, the physician receives written notice of the charges, an opportunity for a more formal hearing before the Committee, a review of the Committee's recommendation by the DCMS's Board of Directors and, at the physician's option, a review by the full membership of the DCMS as well.

There was no evidence presented to indicate any personal bias or malice toward Dr. Brown on the part of any members of the Committee, or on the part of the consulting physicians chosen for Dr. Brown's case by Dr. Sapolsky. Dr. Sapolsky testified that Dr. Brown's case was handled in a routine fashion, in accordance with the normal procedures followed by the DCMS's Judicial Committee in a case such as this.

Based upon the evidence presented, the Court finds that the purpose of the meeting that Dr. Sapolsky requested Dr. Brown to attend, which meeting was to occur on October 11, 1988, was plainly investigatory in nature, and was not intended to lead to any adjudication of Dr. Brown's rights or liabilities under state law, or under the DCMS's own internal by-laws. The sole purpose of that meeting was to discuss the case with Dr. Brown on an informal basis, to obtain the views of the

59

other physicians within Dr. Brown's specialty area, and to determine whether sufficient grounds exist to warrant further investigation and review.

## Conclusions of Law

The legal standards for issuance of a preliminary injunction are familiar. A preliminary injunction is an extraordinary remedy to be granted sparingly, and it is incumbent upon the party seeking a temporary injunction to show (1) that he will suffer irreparable harm absent th injunction, (2) that he has no adequate remedy at law, (3) that there is a substantial likelihood that he will succeed on the ultimate merits of the case, and (4) that considerations of public interest do not preclude a temporary injunction. *E.G., Thomas v Planning Commission of the City of Jacksonville,* 464 So.2d 1231, 1236 (Fla. 1st DCA 1985). A party fails to establish irreparable injury if the facts merely indicate some possible and speculative future detriment that he might suffer absent the injunction. *See Jacksonville Electric Authority v Beemik Builders and Constructors, Inc.,* 487 So.2d 372 (Fla. 1st DCA 1986). Where, as here, a temporary injunction has been entered against a party, that party has the right to move to dissolve the injunction "at any time," Fla. R. Civ. P. 1.610(d), and to present evidence to support dissolution of the injunction. *See Bailey v Christo,* 453 So.2d 1134, 1137 (Fla. 1st DCA 1984), *rev. denied,* 461 So.2d 113 (Fla. 1985); *Seaboard Air Line R. Co. v City of Hawthorne,* 204 So.2d 242 (Fla. 1st DCA 1967.).

In this case, the Court concludes that even without considering the other three elements of the test for a temporary injunction, the plaintiff is not entitled to a continuation of the temporary injunction because he has failed to demonstrate to the court's satisfaction the likelihood that he will ultimately succeed on the merits of his claim. The plaintiff's case principally rests on his contention that the DCMS procedures involved here will deny him due process, since those procedures - as the DCMS concedes - lack the elements that are normally associated with procedural due process: formal notice of charges, the opportunity to confront and cross-examine adverse witnesses, and the opportunity to present witnesses on one's own behalf. Because of the nature of the DCMS proceedings in this case, however, the due process clause is simply not implicated to the extent that the plaintiff contends.

For purposes of due process analysis, the case law makes a clear distinction between proceedings that are merely investigatory and those that are adjudicative in nature. *See Haines v Askew,* 386 F.Supp. 369 (M.D. Fla. 1973), *aff'd* 417 U.S. 901 (1974). As the *Haines* court

pointed out, under the due process clause "investigatory hearings need not supply an individual with the rights of appraisal [*i.e.* notice], confrontation, and cross-examination." *Id.* at 373-74. Such rights are "normally associated with adjudicatory proceedings." *Id.* Here, as in *Haines,* the Court concludes that the DCMS's Judicial Committee "was exercising its executive function of fact finding, and was not adjudicating the rights of any individual." *Id.* at 374; *see also Georator Corp. v EEOC,* 592 F.2d 765, 768-69 (4th Cir. 1979); *Morrell v. Stone,* 638 F. Supp. 163, 166 (W.D. Va. 1986). *See generally Hanna v Larche,* 363 U.S. 420, 442-43 (1960).

Appropriate consideration of these due process cases, in light of the evidence presented at the hearing on the defendant's motion to dissolve, compels the court to conclude that the routine practices of the DCMS in a case such as Dr. Brown's afford the physician adequate due process given the nature of the DCMS proceedings involved. As both a factual and a legal matter, it is plain that at this particular stage of the process, the DCMS's Judicial Committee is exercising a purely investigative function. The Committee does not purport to render any sort of final adjudication based upon the facts presented to it. It merely considers those facts and forwards a recommendation for further action either by the DCMS or by the FMA (and ultimately the Florida Department of Professional Regulation in appropriate cases). The Committee neither imposes nor recommends any sanction whatsoever against the physician based upon the information meeting. Accordingly, its function is not adjudicatory in any sense of the word.

Based upon the foregoing findings of fact and conclusions of law, it is

ORDERED:

1. The temporary injunction entered by the court herein on October 11, 1988, is hereby dissolved.

2. The plaintiff shall have ten days from the date of this order within which to file such further pleadings, if any, as the plaintiff deems advisable.

SO ORDERED in Chambers at Jacksonville, Duval County, Florida this 14th day of November, 1988.