T. Neal MORRIS, Appellee,

v.

**CITY OF DANVILLE, VIRGINIA and Charles F. Church, Appellants,**

and

**William H. Fuller, III, Defendant.**

No. 84–1161.

United States Court of Appeals,
Fourth Circuit.

Argued April 4, 1984.

Decided Sept. 26, 1984.

Scott S. Cairns, Richmond, Va. (James Patrick McElligott, Jr., McGuire, Woods & Battle, Richmond, Va., Gary L. Bengston, Danville, Va., on brief), for appellants.

John S. Barr, Richmond, Va. (Kevin R. Huennekens, James A. Lofton, Maloney, Yeatts & Barr, Richmond, Va., on brief), for appellee.

Before WIDENER, PHILLIPS and CHAPMAN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

The City of Danville, Virginia appeals the district court's injunctive decree requiring it to give its police chief, appellee Neal Morris, a *de novo* hearing concerning the sufficiency of reasons for the termination of his employment with the City, 579 F.Supp. 900. The district court granted partial summary judgment in favor of Morris, after determining that the procedures followed by the City in discharging Morris did not comport with due process. Because we conclude that the lower court's decision conflicts in a critical respect with our decision in *Duffield v. Charleston Area Medical Center, Inc.*, 503 F.2d 512 (4th Cir. 1974), we vacate and remand for further proceedings.

## I

In April 1971, following twelve years of service as a police officer, Neal Morris was selected by the City of Danville as its Chief of Police. While employed in that position, Morris reported directly to the Danville City Manager,[1] from whom he generally received favorable evaluative comments. In December 1982, however, a Danville police officer approached the city manager, appellant Charles F. Church, with charges that Morris had violated both city procedures and state law. Church responded to these allegations by requesting a full investigation of Morris's alleged misconduct. Morris consented to the investigation, which was conducted by William Fuller, the Commonwealth's attorney for the City. Morris was not suspended during the time in which Fuller investigated the allegations.

On July 12, 1983, Fuller presented Church with his report in the form of a 400-page document containing factual statements and quotations from a number of individuals who had been interviewed concerning the propriety of Morris's conduct while Police Chief.[2] On the same day he received it, Church studied the report and concluded, based on its content, that Morris's employment should be terminated. Before notifying Morris of his intentions, however, Church gave Morris an opportunity to read the report and, allegedly, to discuss or refute its contents.[3] According to Church's affidavit, "if Morris had been able to refute or challenge the contents of the report in a material way, he would not

---

1. By ordinance, Morris was answerable directly to the director of public safety, but because the position was never filled, he reported to the city manager.

2. Fuller's report is not contained in the record. It is apparent from other documents, however, that the charges against Morris included, *inter alia*, (1) permitting confiscated guns to be used by unauthorized personnel for nonpolice purposes; (2) failure to assure adequate controls and records for the police department's guns; (3) failing to investigate the gambling activities of a certain police officer; (4) failing to prevent or control misuse of city time by police officers;

and (5) failing to support the issuance of a citation against the former city manager's son.

3. From the affidavits, there seems to be a factual dispute about the existence of any opportunity given Morris to refute the substance of the report before Church gave him notice. Church stated that he offered Morris the opportunity to discuss any of the matters contained in the report and that Morris refused, rejecting the report "as a bunch of crap." Morris stated, however, that he was not afforded an opportunity to discuss the contents of the report with Church prior to being advised of his termination.

at that time have been discharged." When Morris did not respond to the allegations contained in the report, Church informed him of his intention to terminate his employment with the City of Danville. Church then handed Morris a letter, dated July 12, 1983, in which he notified Morris that he was, effective that day, suspended without pay and relieved of his duties as police chief.

In the letter, Church outlined the charges made against Morris and informed him that he would be permanently discharged as of July 19, 1983. The final paragraph of the letter provided:

> You are entitled to an opportunity to refute the basis of this action by notifying my Office in writing within seven (7) calendar days from the date of this letter, if you desire to do so. In the event you make such a request, a hearing will be held by me for the purpose within five (5) working days after receipt of your request, or at a mutually agreeable time. The hearing will be a closed one. You may be represented by an attorney of your choice, at your expense, may present evidence and witnesses in your behalf and may examine and cross examine witnesses. *In the absence of such a request, this action is final.*

(Emphasis added.)

After unsuccessfully requesting a hearing before a three-member grievance panel,[4] Morris, on July 19, asked for a hearing before Church pursuant to the terms of the July 12 letter. The hearing before the city manager began on August 25 and lasted for six days. At the hearing, Morris was represented by counsel and presented numerous witnesses and exhibits. Although the hearing was closed, the testimony of the witnesses, who testified under oath, was transcribed by a court reporter.

In a letter to Morris dated September 12, 1983, Church informed Morris that he was permanently discharged as the Danville Police Chief. In the space of seven pages, Church outlined for Morris the basis for his decision, concluding that:

> The evidence and testimony of your witnesses gives more than ample justification for your dismissal for failure to develop and implement policies, use of political pressure, failure to take adequate care of City property, insubordination, and failure to uphold and enforce City and State laws in a fair and uniform manner.

Church stated in the letter that "after hearing all the evidence and testimony, the substance of the Report of the Commonwealth Attorney remains unimpeached."

After again unsuccessfully requesting a hearing before a three-member panel, Morris filed the present action under 42 U.S.C. § 1983, naming the City of Danville, Church, and Fuller as defendants and contending, *inter alia*[5] that he was denied procedural due process when the City terminated his employment.

The parties filed cross motions for summary judgment. After briefing and argument, the district court granted Morris's motion for partial summary judgment, and enjoined the City of Danville and Church to grant Morris "a new *de novo* hearing before an impartial decision-making body with adequate remedy fashioned after the three member panel provided for in the City's grievance procedures."[6]

---

**4.** Church also asked the Danville City Council to amend the grievance procedure to provide such an appeal, but the Council denied the request.

**5.** In his complaint, Morris alleged that Fuller had violated his right not to be deprived of liberty without due process because Fuller and the other defendants had disseminated certain portions of the investigative report to the public without his consent. He also alleged that the City violated due process by failing to accord him an appeal in accordance with its grievance procedures. *See infra* note 9. In Count II of his complaint, he alleged that appellants had violated due process by failing to accord him a fair and impartial hearing and by denying him the opportunity "to confront adverse evidence."

**6.** The district court granted summary judgment in favor of Fuller on Morris's claim regarding the dissemination of the report. The City's motion for summary judgment was denied. The only issue on this appeal is the propriety of the district court's grant of partial summary judgment in favor of Morris.

In a memorandum opinion accompanying its order, the district court concluded that Church's actions in terminating Morris violated Morris's federal right to procedural due process. Making the dual inquiry mandated by *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the court first decided that under applicable state law, Morris possessed a "property interest" in continued employment with the City and was not an "at will" employee. Relying on Danville's grievance procedure and personnel ordinances, the court stated that:

> there is no question that Morris was a permanent, full-time, non-probationary employee of the City and that he could not be dismissed except for "just cause or reason". These provisions are clearly the type of rules and understanding which define and support a legitimate claim of entitlement to continued employment .... In this case, they are the source from which Morris derives his property interest.

The district court then held that the City violated Morris's right to procedural due process because it failed to provide him with an impartial decisionmaker. Specifically, the court held that because Church has made the initial decision to terminate Morris, he was constitutionally precluded from acting as a decisionmaker in the subsequent hearing. The court noted:

> Regardless of how lavishly the evidentiary hearing in this case is described, the plain fact remains that it was tainted. City Manager Church, the very person who first sought Morris' dismissal, can hardly be considered an impartial decision maker. Indeed, ... it would be difficult to conceive of a situation presenting a more biased decision maker. Likewise, it would seem that any attempt by Morris to challenge the sufficiency of his discharge was, at best, merely an exercise in futility.

On application by the City pursuant to Fed.R.App.P. 8(a), the district court's order was stayed by a member of this court pending the resolution of this appeal.

## II

As indicated, the district court, taking the proper analytic approach, first determined that Morris had a protectible property interest in continued employment, and then determined that the procedures followed by defendants in terminating his employment did not accord him procedural due process. Of course, if the court erred in either of these determinations, the judgment cannot stand, and the defendants predictably contend that it erred as to both.

### A

At the outset, we agree with defendants that the court erred in the specific basis upon which it determined that procedural due process was not accorded Morris. As noted, the basis was that because Church had "first sought Morris' dismissal" and then, following a hearing over which Church presided, had also made the ultimate decision to terminate Morris, the procedure had not afforded Morris the impartial decisionmaker required by due process.

■■■ The district court was of course correct that "[a]n impartial decisionmaker is an essential element of due process." *Bowens v. North Carolina Department of Human Resources*, 710 F.2d 1015, 1020 (4th Cir.1983) (citing *Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970)). But we do not agree that under the circumstances of this case Church ceased to be an impartial decisionmaker simply by virtue of having made a conditional decision to terminate Morris pending further developments in an administrative process had not then closed.

Administrative decisionmakers, like judicial ones, are entitled to a "presumption of honesty and integrity," *see Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), and absent a showing of bias stemming from an "extrajudicial source," they are not constitutionally precluded from making the determination that they are directed to make by their employer. *See generally Bowens v. North*

*Carolina Department of Human Resources,* 710 F.2d 1015, 1020 (4th Cir.1983) ("To be disqualifying, personal bias must stem from a source other than knowledge a decision maker acquires from participating in a case."). On the record we review, that presumption has not been overcome by any showing of bias stemming from sources outside the decisional process.

This conclusion is supported by our decision in *Duffield v. Charleston Area Medical Center, Inc.,* 503 F.2d 512 (4th Cir. 1974). In *Duffield,* the Governing Board of a hospital, acting on the *ex parte* recommendation of its Department of Surgery, revoked a physician's hospital privileges, subject to his right of appeal to the hospital's Joint Conference Committee. A majority of the Joint Conference Committee, which upheld the revocation of privileges, was comprised of members of the Governing Board. In his complaint, Duffield contended that it violated procedural due process for the members of the Governing Board first to revoke his privileges and then to decide finally to terminate his relationship with the hospital. The district court dismissed the complaint, and, on appeal, we affirmed. We held that the action of the Governing Board which consisted of receiving and conditionally approving the recommendation not to renew the plaintiff's hospital privileges, did not result in any "extrajudicial" bias on the part of its members and therefore did not preclude the members' participation in the post-termination proceedings. *Id.* at 518. The Governing Board's action, we noted,

> represented simply a step, largely a procedural one at that, in the administrative resolution of the proceedings involving the appellant. It was an action taken on an *ex parte* recommendation. No evidence was taken by the Board at that stage. The decision taken was purely tentative and conditional; it became *final only if the appellant voluntarily*

chose to accept the recommendation and not to contest it.

*Id.* at 518–19 (emphasis in original).

The record here reveals that Fuller, the Commonwealth's Attorney, presented Church with a report documenting certain charges of misconduct. Church studied the report, and based on the unrefuted allegations contained therein, decided both to suspend Morris and to notify him of the City's intention to discharge him, subject to a hearing. Church stated that "if Morris had been able to refute or challenge the contents of the report in a material way, he would not at that time have been discharged." Absent such refutation, Church decided that the *ex parte* submission of Fuller justified Morris's dismissal. As with the physician in *Duffield,* the notice given to Morris was not final, but was conditional upon the outcome of a hearing that could be requested by Morris. Only in the absence of a request for a hearing was the termination decision final. In this case, as in *Duffield,* the decision by Church to terminate Morris was largely a procedural step, designed to inform Morris of the charges against him and of his opportunity to respond to them at a subsequent hearing. Similarly, Church's conditional decision was based on the *ex parte* submission of Fuller, which was embodied in the investigative report. *Cf. FTC v. Cement Institute,* 333 U.S. 683, 701, 68 S.Ct. 793, 803, 92 L.Ed. 1010 (1948) ("the fact that the Commission had entertained such views as the result of its prior *ex parte* investigations did not necessarily mean that the minds of its members were irrevocably closed on the subject"). Contrary to the district court's view, Church's initial decision to discharge Morris operated merely to inform Morris of the charges against him and simply reflected the fact that, in Church's view, the allegations made in Fuller's report were sufficient cause to terminate Morris's employment if he did not refute them at the hearing.[7]

---

**7.** As we noted in *Duffield,* some procedure has to be adopted to notify an individual of his right to have an administrative hearing. *See* 503 F.2d at 519. The mere fact that an administrator knows of the charges against an employee, and is aware that the charges are serious enough to result in the employee's discharge, cannot automatically, as a matter of constitutional law, pre-

The district court accordingly erred in holding that merely by virtue of his prior participation in the proceedings leading to Morris's discharge, Church was in effect constitutionally disqualified to participate further, and in requiring that Morris be afforded a *de novo* hearing by persons other than Church. *Cf. Vanelli v. Reynolds School District,* 667 F.2d 773, 779–80 & n. 10 (9th Cir.1982) (school board's earlier participation in administrative process leading to teacher's discharge did not, standing alone, make it impermissibly biased in subsequent hearing).[8]

This holding does not, however, dispose of this appeal. Several questions remain open that make it impossible, or at least improvident, for us to attempt final resolution of the case at this point.

### III

There is, first off, the possibility that Church might be shown to have had a disqualifying personal bias that did stem from a source other than his prior participation in the administrative process. The district court understandably did not address this possibility though, as we read the record, Morris sought to suggest "extra-judicial" sources for bias as well. We express no opinion as to whether on the summary judgment record before the court a genuine issue of fact as to this possibility was raised. We merely observe that it should be considered an open question upon the remand we order.

### IV

Second, there remains an open question as to whether, assuming an entitlement to procedural due process and that the process afforded here was not flawed by decisionmaker bias, it may have been otherwise inadequate. This broader question of the adequacy of process was raised by Morris, but was not, again understandably, addressed by the district court in view of its narrow basis for finding the process flawed. While we might undertake to resolve that issue on the record we review, it was not briefed and, under the circumstances, we think it should be addressed in the first instance by the district court.

As we remand this broader issue for district court determination (if needed finally to resolve the case), we offer only this observation. While the exact contours of the procedural due process right at issue may not have been definitively established in authoritative decisions, certain essentials of the process have been. *See, e.g., Thom-*

---

clude the administrator's further participation in the proceedings. If such were the case, it is difficult to imagine what administrative decisionmaker would not be disqualified from deciding the questions involved. Church's initial decision to terminate Morris was tantamount to a "show cause" order, which notified Morris both of the extensive factual issues to be resolved at the hearing and of their seriousness. As with the Governing Board's action in *Duffield,* Church's decision:

> may be accurately described as an administrative step in bringing the issue to a head, much as the issuance of a show cause order in connection with an aplication for preliminary injunctive relief in judicial proceedings sets the stage for a valid hearing on the issues presented by such application.

503 F.2d at 519. *See also Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) ("there is no incompatibility between the agency filing a complaint based on probable cause and a subsequent decision, when all the evidence is in, that there has been no violation of the statute").

8. In *Withrow,* the Supreme Court noted in dicta that when "review of an initial decision is mandated, the decisionmaker must be other than the one who made the decision under review." 421 U.S. at 58 n. 25, 95 S.Ct. at 1470 n. 25, *citing Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Morris relies on this language to support his contention that Church was constitutionally disqualified from further participation following his initial decision to terminate him. We do not believe, however, that the "review" in this case was of a final decision and therefore we do not find this language dispositive. Church's decision, as we noted earlier, was akin to a preliminary finding and did not reflect an irrevocable position on the merits taken after a full adversary proceeding. *Cf. Vanelli,* 667 F.2d at 780 n. 12 ("Review, in the ordinary sense of appeal to a different authority, was not mandated here . . . ."). *See also Hortonville Joint School District No. 1 v. Hortonville Educational Association,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976).

*as v. Ward,* 529 F.2d 916 (4th Cir.1975) (right to confront and cross-examine witnesses about material, disputed facts); *McNeill v. Butz,* 480 F.2d 314 (4th Cir. 1973) (same). The burden of course is upon Morris to demonstrate wherein the hearing leading to his final termination failed to provide him the minimal process constitutionally guaranteed him, assuming he had a protectible property interest in continued employment.

## V

■ This leads to the final question that we conclude should be considered an open one upon remand: whether Morris did have such a property interest. The district court, as indicated, held that he did. We are not prepared to conclude on the record before us that this was error. But because of our concern that the court may not sufficiently have taken into account certain critical elements of state and local law in making this determination, neither are we now prepared to affirm the court's conclusion.

We might of course resolve the issue—up or down—on the record before us; it is a question of law ripe for decision on that record. But both because of the importance of having questions of the relationship between state and local law in defining property interests decided in the first instance by district judges, *see Bishop v. Wood,* 426 U.S. 341, 345–46 & n. 10, 96 S.Ct. 2074, 2077–78 & n. 10, 48 L.Ed.2d 684 (1976), and because the case must in any event be remanded for further proceedings, we have concluded that we should not do so.

In remanding that issue for reconsideration (if required to resolve the case), we offer the following observations for guidance of the district court.

### A

State law of course provides the referant for determining the existence of a constitutionally protected property interest in this case, and this means *all* the law, both state and local, that might operate in conjunction to establish the existence and scope of the claimed property interest. *See id.*

Here, we think the relevant state law sources would necessarily include certain principles of state common law respecting personnel service contracts in general, certain personnel provisions of the charter of the City of Danville, and certain city ordinances and regulations implementing those charter provisions. As we read the district court's opinion, we are left in doubt as to whether all these sources were taken into account.

We briefly summarize here those features of the relevant sources that must necessarily be taken into account upon reconsideration of the issue. In doing so, we express no opinion on the merits of the question.

### B

First off, there are general common-law principles that seemingly bear upon the important threshold question whether Morris's employment was at will or was terminable only for cause. State court decisions suggest on the one hand that where no specific time is fixed for the duration of employment, the employment is presumed to be at will and, accordingly, to involve no protectible property interest, *see, e.g., Sea-Land Service, Inc. v. O'Neal,* 224 Va. 343, 297 S.E.2d 647, 650 (1982); and, on the other hand, that without regard to the stated duration of employment, if a contract provides for termination only for good cause, the employment is not at will and does give rise to a protectible property interest, *see, e.g., Norfolk Southern Railway v. Harris,* 190 Va. 966, 59 S.E.2d 110, 114–15 (1950); *accord Frazier v. Colonial Williamsburg Foundation,* 574 F.Supp. 318, 320 (E.D.Va.1983).

### C

Next, the charter for the City of Danville has personnel provisions that must be taken into account.

Specifically, the charter, in defining the powers and duties of the city manager,

authorizes that official "to exercise supervision and control over all administrative departments and divisions of the city, except as otherwise provided by this charter *or ordinance of the council.*" Danville City Charter § 3–3(B)(2) (emphasis added). The charter further gives to that official the sole responsibility for hiring and firing city officers and employees:

§ 3–5. Appointment and removal of officers and employees.—The city manager shall appoint *for an indefinite term,* except as otherwise provided in this charter, the heads of all departments and all other officers and employees of the city. The city manager shall have power to remove any officer or employee appointed by him. (Emphasis added.)

### D

Finally, these charter provisions are supplemented by personnel ordinances and regulations of council adopted from time to time. Some bear with obvious relevance upon the question of Morris's employment status at the critical time.

One such ordinance classified city employees as either full-time, permanent, or probationary. *Danville City Ordinance No. 83–6.13.* Per this ordinance, a permanent employee, the category into which Morris indisputably fit, was defined as "a person employed full-time on a regular and continual basis for the City." This ordinance also defined "dismissal" as "[t]he termination of an employee's service *for just cause or reason.*" (Emphasis added.)

Applicable personnel system regulations further defined the employment relationship between a municipal employee and the City of Danville. These regulations outline the disciplinary policy of the City, including both the substantive grounds sufficient for discharge and the procedures for appealing an adverse disciplinary action. The regulations specify that probationary employees shall have "no rights of employment as do permanent, non-probationary employees." Among the rights that are enjoyed by permanent employees is the right to appeal a department head's recommendation of dismissal to the city manager. *See* Danville Personnel System Regulations § VIII(B)(5)(a). The regulations specifically provide that "[r]esponsibility for dismissal or discharge of permanent non-probationary employees of the City is vested only with the City Manager." The city manager "may, *for just cause or reason,* dismiss any employee of the City against whom any charge has been substantiated." *Id.* (emphasis added).

The regulations further provide that permanent employees, in contrast to those with probationary status, "may appeal through the grievance system." *See id.* § VIII(D). Enacted by the Danville City Council in 1978 in response to a directive from the General Assembly of Virginia, *see* Va.Code § 15.1–7.1 to 7.2, the grievance ordinance sets out a four-step procedure, which may be utilized to challenge, *inter alia,* disciplinary actions involving dismissal. The final step of the procedure involves a hearing before a three-member panel, which may act upon a majority vote. A "Reservation of Management Rights Clause" provides that the City shall have the right to "demote or dismiss employees for proper cause." [9]

The point needs no belaboring that these various sources of state law contain argua-

---

9. The parties vigorously dispute whether the applicable grievance procedures permitted Morris to appeal to a three-member panel. The grievance ordinance, as originally enacted, specified that department heads, such as Morris, were not "covered personnel" and therefore were not entitled to file grievances. *See* Danville Ordinance No. 78–12.5, *Coverage of Personnel* (2)(e). Appellants maintain that this exclusion is still in effect. Morris maintains, however, that the grievance procedure, which was a part of the City's personnel system, was modified by later enacted personnel ordinances. These ordi-

nances apparently extended to cover department heads, and expressly repealed all prior inconsistent personnel provisions, including, Morris argues, the limited coverage provided by the grievance ordinance. The district court did not resolve this conundrum, nor do we, in view of our disposition of the case. We do note, however, that the mere fact that a state agency violates its own procedures does not, *ipso facto,* mean that it has contravened federal due process requirements. "An agency is required to comply with its regulations that are congruent with the requirements of constitutional due pro-

ble inconsistencies and ambiguities as the composite source of Morris's employment status.[10] This, of course, presents a situation frequently encountered by courts and requires the usual effort to construe the various sources *in pari materia* according to accepted canons. Our concern is only that in reaching its original conclusion the district court may not have considered all the relevant sources: specifically, the bearing of general state law respecting personnel service contracts and the relevant provisions of the city charter. As we read its opinion, attention was concentrated exclusively on the most immediately relevant provisions of the personnel ordinances and regulations.

In remanding this issue for redetermination, we intimate no view that had these other sources been properly considered the court should or might even more probably have concluded differently. Our concern is only that the first instance determination shall have been based upon a proper consideration of all relevant sources.

### VI

In summary, we hold that the district court erred in concluding that procedural due process was denied Morris solely by virtue of the prior participation of the ultimate decisionmaker, Church, in the administrative process leading to Morris's final discharge. On this basis we vacate the partial summary judgment which awarded injunctive relief in the form of a *de novo* hearing.

Rather than undertaking final resolution of the case with this specific error now corrected, we have concluded instead to remand for first instance determination or redetermination by the district court of the following possibly dispositive issues: whether decisionmaker bias from an extra-judicial source may have resulted in a denial of procedural due process; whether procedural due process may have been otherwise denied; whether Morris had a constitutionally protected property interest in continued employment, taking into account all relevant sources of state and local law.

Upon remand, the case is before the district court for initial reconsideration on the cross-motions for summary judgment in light of our opinion. Of course, the district court may address the remanded issues in any sequence it desires and on the extant or a reopened record as it sees fit, and may conduct such further proceedings as are required to enter final judgment.

**VACATED AND REMANDED FOR FURTHER PROCEEDINGS.**

---

cess." *Detweiler v. Commonwealth of Virginia Department of Rehabilitative Services,* 705 F.2d 557, 561 (4th Cir.1983). *See also Bowens v. North Carolina Department of Human Resources,* 710 F.2d 1015, 1019 (4th Cir.1983) ("An agency's violation of its regulations is not unconstitutional unless the regulations are necessary to afford due process.").

**10.** For example, the quoted charter provision, *supra* pp. 20–21, directs the city manager to hire officers such as Morris for an "indefinite term,

except as otherwise provided in this charter." This obviously requires some attention in view of other provisions in ordinance and regulation that clearly imply, or establish, that some city employees and officers, presumably including Morris, though hired for "an indefinite term," may be dismissed only "for good cause," and in view of the general provisions of state decisional law that employment for "an indefinite term" is presumptively "at will."