Donnie **MORRELL**, Plaintiff,

v.

Thomas **STONE**, et al, Defendants.

Civ. A. No. 84–0127–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

June 18, 1986.

Cynthia D. Kinser, Pennington Gap, Va., for plaintiff.

Walter Bressler, Edward G. Stout, George M. Warren, Jr., Bristol, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiff, Donnie Morrell, instituted this section 1983 action against the defendants, Thomas Stone, Hugh Cooper and the City of Bristol, Virginia, over his alleged involuntary resignation from the City of Bristol Police Department (Police Department).[1] He claims that the defendants violated his property and liberty interests in his job and reputation, respectively, under the First and Fourteenth Amendments. The action is now before the court on cross-motions for summary judgment pursuant to Fed.R. Civ.P. 56. Jurisdiction is based on 42 U.S.C. § 1983.

### I.

The relevant facts and events leading up to the institution of this action are as follows. Prior to his resignation, plaintiff Morrell was a police officer with the Police Department. Defendant Stone was the Chief of Police of the Police Department and defendant Cooper was the Bristol City Manager. On April 9, 1982, one Major Cecil Mumpower received a memorandum from one Lieutenant Charles Cross, both of whom were with the Police Department, in which Cross stated that he had loaned Morrell a gun to use on the firing range and had asked Morrell for its return; that Morrell denied receiving the gun though Morrell had stated to another police officer that

it was in his possession; and that he would like for Major Mumpower to take the matter up with Morrell, but if the gun was not returned to him by April 16 he would bring a civil suit against Morrell. When the memorandum was first brought to Chief Stone's attention, Stone took the position that the dispute was merely a civil matter and should be handled between Morrell and Cross without resort to a departmental investigation.

Subsequently, Stone was informed that Cross had, in fact, filed a civil suit against Morrell. According to Stone, he decided at that time, upon reconsideration, that the controversy might reflect adversely upon both Morrell and the Police Department, so he thus proceeded to direct an internal investigation into the matter. In a memorandum dated May 11, 1982, Stone informed Morrell that:

> In accordance with the Law Enforcement Officers' Procedural Guarantees, Chapter 10.1, The Code of Virginia, I am advising you that this Department is conducting an internal investigation. The charges stem from the allegation that you failed to return the property of another police officer. To Wit: A Model 14 K38 S.W. Pistol, the property of Lt. Charles Cross, which was alleged [sic] received by you in 1978 or 1979 and is alleged it has not been returned to Lt. Charles Cross.

Morrell was further advised in the memorandum that action that could be taken against him as a result of the investigation included dismissal.

The trial on Cross' civil warrant in detinue against Morrell was held on June 3, 1982, in the Bristol, Virginia General District Court, with judgment entered for Cross in the amount of three-hundred fifty dollars. At that time, the departmental investigation was still ongoing and Morrell had not been informed by anyone in the Police Department to the contrary, though he has stated that a city councilman told him prior to the trial that he was going to

---

1. Other individuals originally named as defendants in this action have been dismissed from the case by orders of this court dated June 18, 1985 and May 7, 1986.

have it stopped. After attending the trial, Stone sought and received defendant Cooper's approval as City Manager to ask Morrell for his resignation, and if Morrell refused, to dismiss him from his position. Cooper has explained that Stone sought such approval because, based on what he had heard in the court testimony, Morrell's credibility had been "greatly impaired." Stone also directed two officers to go to Morrell's residence that same evening to obtain Morrell's gun, badge and police I.D., and to inform him that he was being suspended.

Morrell met with Stone the following day, June 4, 1982. In that meeting, which was attended by at least four other officers, Stone presented Morrell with the choice of either resigning or being dismissed. Morrell ultimately made the decision to submit his resignation, but only after having left the meeting to discuss the matter with his wife and his attorney. Immediately after Morrell resigned, Stone made a public statement announcing the resignation.

Morrell now contends that in conducting the subject investigation and in allegedly forcing him to resign the defendants denied him his rights under Virginia's "Law-Enforcement Officers' Procedural Guarantees," VA.CODE §§ 2.1–116.1–2.1–116.9 (1979), which, in turn, constituted a violation of his constitutionally protected property rights in his job under the First and Fourteenth Amendments. He also contends that the public statements made by Stone violated his constitutionally protected liberty interests in his reputation under the First and Fourteenth Amendments.

## II.

To establish a procedural due process claim a plaintiff must show that he has been deprived of a protected liberty or property interest encompassed in the due process clause of the Fourteenth Amendment. *Board of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). As to constitutionally protected property interests in public employment, such interests are created and their dimensions defined, not by the federal constitution, but rather by independent sources such as state law, local ordinances and employment contracts. *Id.* There is some question in the present case whether plaintiff had such a property interest in his position with the Police Department.[2] For

**2.** In *Himmelbrand v. Harrison,* 484 F.Supp. 803 (W.D.Va.1980), Judge Turk held that the "Law-Enforcement Officers' Procedural Guarantees," VA.CODE §§ 2.1–116.1–2.1–116.9 (1979), provided a police officer with the City of Bedford, Virginia Police Department a property interest in his job. In reaching that decision, Judge Turk relied upon *Prince v. Bridges,* 537 F.2d 1269, 1272 (4th Cir.1976), in which the Fourth Circuit stated that "[a] constitutional guarantee of procedural due process arises when a public employee is discharged in violation of the procedural rules designed to protect him." *Himmelbrand* and *Prince* thus support plaintiff's contention that he has a protected property interest in his job. *See also Detweiler v. Virginia Dep't of Rehabilitative Serv.,* 705 F.2d 557 (4th Cir.1983).

However, in a more recent case, *Morris v. City of Danville, Va.,* 744 F.2d 1041, 1047 (4th Cir. 1984), the Fourth Circuit remanded a decision in which the district court held that the City of Danville, Virginia Police Chief had a protected property interest in his job. The court remanded that portion of the decision based on the court's "concern that the [district] court may not sufficiently have taken into account certain critical elements of state and local law in mak-

ing [its] determination ...." The court proceeded to explain that:

[W]e think the relevant law sources would necessarily include certain principles of state common law respecting personnel service contracts in general, certain personnel provisions of the charter of the City of Danville, and certain city ordinances and regulations implementing those charter provision.

Most significant in regard to the present case, as well as *Himmelbrand,* is the fact that the *Morris* court set out these directives even in light of the fact that the City of Danville had instituted a grievance procedure to be utilized by permanent city employees to challenge, *inter alia,* disciplinary actions involving dismissal. That procedure was, of course, to be taken into consideration along with the other "... arguable inconsistencies and ambiguities [that made up] the composite source of [the Police Chief's] employment status." *Id.* at 1048, 1049. *Morris* thus stands for the proposition that procedural protections along do not necessarily determine whether a property right exists for purposes of due process. *Accord Wells Fargo Armored Serv. v. Georgia Public Serv. Comm'n,* 547 F.2d 938 (5th Cir.1977).

purposes of this decision, the court will nevertheless assume, without deciding, that plaintiff did have a protected property interest in that job.

■ Turning, then, first to the propriety of the departmental investigation into the allegations made against plaintiff, the court finds that the procedure under which plaintiff was investigated meets the requirements of due process. In addressing the differences between investigative and adjudicative functions of governmental agencies, the Fourth Circuit, in *Georator Corp. v. Equal Employment Opportunity Comm'n*, 592 F.2d 765, 768–769 (4th Cir. 1979), explained that: "[w]hen the preliminary determination [of an investigation] is without legal effect in and of itself, due process will be satisfied if there is an opportunity to be heard before any final order of the agency becomes effective. *Ewing v. Mytinger & Casselberry*, [339 U.S. 594, 598, 70 S.Ct. 870, 872, 94 L.Ed.2d 1088 (1950) ]." The court there also cited to the Supreme Court's decision, *Hannah v. Larche*, 363 U.S. 420, 442, 80 S.Ct. 1502, 1515, 4 L.Ed.2d 1307 (1960), in which the Supreme Court stated that "... when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used." Under the provisions of VA.CODE § 2.1–116.5 of the "Law-Enforcement Officers' Procedural Guarantees," an officer has the right to request a grievance hearing whenever a departmental investigation culminates into a dismissal, demotion, suspension or transfer for punitive reasons. The Virginia Code also provides, in addition to the grievance hearing, that before any such action may be imposed the officer must be notified in writing of all charges, the basis for the charges and the action which may be taken. VA.CODE § 2.1–116.4 (1979). With plaintiff having been given such notice at the outset of the subject investigation, which could not in and of itself result in adverse action, and with a grievance procedure provided for in the event the investigation would lead to collateral action

such as dismissal, defendants cannot be found to have violated due process in conducting the investigation.

The second issue here presented involves plaintiff's claim that he was denied due process as a result of his alleged forced resignation. More specifically, plaintiff contends that he was forced to resign without being given the right to a grievance hearing as provided under VA.CODE § 2.1–116.5. The issue is whether plaintiff's resignation was voluntarily submitted, for if it was submitted voluntarily he waived his right to procedural protections to which he might otherwise be entitled, i.e., a grievance hearing. *See Jurgensen v. Fairfax County, Va.*, 745 F.2d 868, 889–890 (4th Cir.1984).

Courts that have decided whether a particular demotion or resignation was taken voluntarily have generally based their decision on the principle that the element of voluntariness is vitiated only when the demotion or resignation was agreed to under duress brought on by government action. *See e.g., Jurgensen*, 745 F.2d 868; *Christie v. United States*, 518 F.2d 584, 207 Ct.Cl. 333 (1975); *Onnen v. United States*, 524 F.Supp. 1079 (D.Neb.1981); *Stanley v. Commissioners, United States Civil Service Comm'n*, 505 F.Supp. 63 (W.D.Mo. 1980). In *Jurgensen*, the Fourth Circuit addressed the issue in the context of a public employee's claim of duress as a defense to his signed agreement to a demotion. Similar to the plaintiff in the present case, the employee in *Jurgensen* had the choice of taking a demotion or facing possible disciplinary action ranging from demotion to dismissal as a result of his having violated a departmental regulation of the Fairfax County, Virginia Police Department. Based on an analysis under the Restatement (Second) of Contracts, the court held that the "threat of dismissal staring [plaintiff] in the face" did not constitute duress. Critical to the court's holding was the fact that plaintiff had a right to seek relief under administrative proceedings provided under the Civil Service Act had his superior recommended that he be

dismissed. *Jurgensen*, 745 F.2d at 889, 890. As the court explained:

> The law is that a threat which may be sufficient to void an agreement exists only 'if a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative....' Restatement (Second) of Contracts § 175 (1981). The Restatement proceeds to specify in § 176 when, under this rule, a threat may be deemed improper. These are:
>
> > '(a) what is threatened is a crime or a tort, or the threat itself would be a crime or a tort if it resulted in obtaining property.
> >
> > '(b) what is threatened is a criminal prosecution,
> >
> > '(c) what is threatened is the use of civil process and the threat is made in bad faith, or
> >
> > '(d) the threat is a breach of the duty of good faith and fair dealing under a contract with the recipient.'
>
> In connection with its comments on its specification (d), the Restatement said that 'a threat to commence civil process, even if improper, may not amount to duress since defense of the threatened action is often a reasonable alternative.'

*Id.* Absent a showing of duress as a result of such kinds of threats, plaintiff's agreement to a demotion was voluntary as a matter of law. *Id.* at 890.

Similarly, in the *Christie* case, a Navy Department employee claimed that her resignation was obtained by duress. Her alternative to resigning was to face dismissal for cause based on a charge that she allegedly struck her supervisor. The overriding consideration that guided the *Jurgensen* court—that the employee could have grieved any disciplinary action that might have been taken against him—also guided the court in *Christie* in finding that the Navy Department employee's resignation was voluntarily submitted. As the *Christie* court explained:

> While it is possible plaintiff, herself, perceived no viable alternative but to tender her resignation, the record evidence supports [the Civil Service Commissioner's] finding that plaintiff chose to resign and accept discontinued service retirement rather than challenge the validity of her proposed discharge for cause. The fact remains, plaintiff *had a choice.* She could stand pat and fight. She chose not to. Merely because plaintiff was faced with an inherently unpleasant situation in that her choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of her resignation.

*Christie*, 518 F.2d at 587 (emphasis in original). The court proceeded to explain that:

> This court has repeatedly upheld the voluntariness of resignations where they were submitted to avoid threatened termination for cause. Of course, the threatened termination must be for good cause in order to precipitate a binding, voluntary resignation. But this 'good cause' requirement is met as long as plaintiff fails to show that the agency knew or believed that the proposed termination could not be substantiated.

*Id.* (citations omitted).

▆▆▆ Based on the authority above, this court concludes that plaintiff's resignation was voluntary as a matter of law. The court reaches this conclusion after finding, first, that plaintiff's "threatened termination" was made in good faith as there was a for cause basis to substantiate the proposed dismissal. After hearing testimony both for and against plaintiff regarding the allegations against him for what amounted to wrongful possession of another's property, defendant Stone had a legitimate basis for seeking plaintiff's dismissal.[3] Second, the court finds that, rather than resigning, plaintiff could have chosen to challenge through the grievance proce-

---

**3.** Plaintiff implies that it was improper for Stone to initiate such action at that time since plaintiff had noted an appeal of the judgment entered against him. It was within Stone's discretion, however, to make the initial decision of whether disciplinary action should have been taken against plaintiff based on what he had heard at trial.

dure made available to him under VA. CODE § 2.1–116.5 of the "Law-Enforcement Officers' Procedural Guarantees" any adverse disciplinary action taken against him by the defendants. Plaintiff will not be heard to say that he was not informed of either the Virginia Code's procedural guarantees for law-enforcement officers nor the reasons for his being put to the choice of resigning or being dismissed. He has admitted in his deposition testimony that he received the written memorandum from defendant Stone stating the reasons for the investigation into allegations that could lead to his dismissal and noting that the matter would be handled pursuant to the "Law-Enforcement Officers' Procedural Guarantees" of the Virginia Code. Moreover, plaintiff has admitted that he talked with his attorney before making the decision to submit his resignation. Thus, having voluntarily resigned, plaintiff cannot now claim he was denied procedural protections that he waived.

> [A government agency] cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them. Because the procedural protections existed, the [government agency] cannot be accused of withholding them in a seciton 1983 suit.

*Dusanek v. Hannon,* 677 F.2d 538, 543 (7th Cir.1982).

With respect to plaintiff's claim that his liberty interests were violated as a result of certain public statements made by defendant Stone, plaintiff is without a cause of action under the authority of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), since the defendants did not deprive plaintiff of a grievance hearing. The Supreme Court held in *Paul v. Davis* that defamation by a state official is not a federal constitutional tort. As the Fourth Circuit explained in *Cox v. Northern Virginia Transp. Comm'n,* 551 F.2d 555, 558 (4th Cir.1976):

> The federal tort [under the holding of *Paul v. Davis*] is the breach of the duty that the fourteenth amendment imposes on states and their officials not to de-

prive a person of liberty without due process of law. Specifically, when a government employee is dismissed without a hearing, having been publicly charged with dishonesty or other wrongdoing that will injure his or her liberty to obtain other work, the federal tort is not the defamation. The federal tort is the denial of a hearing at which the dismissed employee has an opportunity to refute the public charge. The remedy, therefore, must be related solely to the employee's loss resulting from discharge without a hearing.

For a more detailed discussion of *Paul v. Davis,* see *Mosrie v. Barry,* 718 F.2d 1151 (D.C.Cir.1983).

In conclusion, the court cannot find either as a result of the subject investigation, plaintiff's resignation, or defendant Stone's public statements regarding plaintiff's resignation, that the defendants deprived plaintiff of a liberty or property interest under the due process clause of the Fourteenth Amendment. Furthermore, the court cannot find any deprivation of First Amendment rights implicated on the facts of this case as plaintiff has alleged. Therefore, plaintiff's motion for summary judgment is hereby denied and defendants' motion for summary judgment is hereby granted.