Thomas N. **CARTER**, M.D.,

v.

**MARYLAND COMMISSION on MEDICAL DISCIPLINE and Hilary T. O'Herlihy, M.D.**

Civ. No. K–86–831.

United States District Court, D. Maryland.

June 30, 1986.

James W. Bartlett, III, Baltimore, Md., and Philip L. Chabot, Jr., Washington, D.C., for plaintiff.

Stephen H. Sachs, Atty. Gen. of Maryland, and Varda N. Fink and Joseph P. McCurdy, Asst. Attys. Gen. of Maryland, Baltimore, Md., for defendants.

**FRANK A. KAUFMAN, Senior District Judge.**

During the 1985 trial of Gary Mandel, a son of Maryland's former Governor, in which Gary Mandel was acquitted of the charge of distributing dilaudid and convicted of forgery, plaintiff, Dr. Thomas N. Carter, a doctor licensed to practice medicine in Maryland and elsewhere, with an office located in Chevy Chase, Maryland, testified that he had prescribed a large number of dilaudid pills for Gary Mandel during a period of approximately two years. After the Baltimore Sun published one or more accounts of the Gary Mandel trial, the Maryland Commission on Medical Discipline (Commission), an official state agency charged with the responsibility to investigate and to prosecute violators of Maryland's medical practice laws, on October 4, 1985 asked the Medical and Chirurgical Faculty of the State of Maryland (Med Chi) to conduct an investigation of plaintiff's medical practice and to submit a report within 90 days as provided by Md. Health Occ. Code Ann. § 14–501, et seq. (1986). Med Chi submitted its report to the Commission on January 23, 1986, 110 days after Med Chi had received the Commission's request.

Based upon Med Chi's report, the Commission, on February 6, 1986, issued an Order for Emergency Suspension of License, referring specifically to the Sun's article of October 4, 1985 and the subsequent Med Chi investigation conducted at the request of the Commission, and summarily restraining plaintiff from the practice of medicine in Maryland. Plaintiff immediately surrendered to the Commission his license to practice and permits to issue controlled substances, and orally requested a hearing. Plaintiff was at first orally advised that that hearing would be held on February 18, 1986 but subsequently was orally advised that that date had been changed to February 25, 1986. The administrative prosecutor of the Commission also advised plaintiff that if plaintiff so requested, the Commission might hold a prehearing conference. After plaintiff so requested, the conference was held on February 25, 1986 and the hearing date was postponed.

The parties have stipulated as follows:

Prior to the pre-hearing conference, counsel for Plaintiff and the administrative prosecutor prepared a proposed consent order incorporating the disciplinary action recommended in the Med Chi report. Med Chi had recommended suspension of Plaintiff's license, revocation of his prescription privileges and a stay of the suspension under terms of probation including limitation or monitoring of his prescribing practice and reeducation in the field of pharmacology and drug use, as well as upgrading his general cognitive knowledge.

The pre-hearing conference was held February 25, 1986, in lieu of the hearing on the emergency suspension order previously scheduled to begin on that date. Present at the prehearing conference were the Chairman and one other member of the Commission, the Executive Secretary to the Commission, the counsel to the Commission, the Administrative Prosecutor, Plaintiff, and counsel for Plaintiff.

At this conference, the Administrative Prosecutor presented the proposed consent order. However, after conferring among themselves the Commission members present rejected this recommendation and proposed, instead, a revocation of Plaintiff's license for a minimum of one year, together with certain requirements for re-instatement. Plaintiff then spoke in his defense.

Joint Stipulations of Facts, filed April 2, 1986.

On March 3, 1986, plaintiff wrote a letter to the Commission rejecting the proposal made by the Commission members present at the February 25, 1986 conference and on March 4, 1986 filed a motion with the Commission, seeking vacation of its February 6, 1986 suspension Order. Thereafter the Commission scheduled a hearing for March 18, 1986 and refused the joint request of the administrative prosecutor and of counsel for plaintiff for a two-week delay.

However, the hearing was postponed because of the death of a member of the family of the administrative prosecutor. On March 17, 1986, plaintiff instituted this case, asserting subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3),[1] and seeking declaratory and injunctive relief including vacation of the February 6, 1986 Order and prohibition of the commencement and the holding of the hearing. In so doing, plaintiff alleged that he has been deprived of procedural due process and contended, in support of that allegation, that the Commission failed to adhere to applicable statutory and regulatory requirements and had not provided plaintiff with a prompt hearing, and further contended that plaintiff could not receive a fair and impartial hearing by the Commission.

Defendants, the Commission and its chairman—the latter is named as a defendant herein in his official capacity—have moved to dismiss plaintiff's complaint herein relying heavily upon *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny.

*Younger* establishes that principles of equity, efficiency and comity require a federal district court to dismiss a federal claim for injunctive relief when there is pending a state criminal proceeding in which plaintiff has an adequate opportunity to raise and litigate his federal constitutional claims. In a companion case, the Supreme Court applied *Younger* in a declaratory judgment context. *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). The *Younger* doctrine is, however, not applicable if there is present bad faith, harassment, or other "extraordinary circumstances," or if the state statute involved is " 'flagrantly and patently violative of express constitutional prohibitions.' " 401 U.S. at 53–54, 91 S.Ct. at 754–55, at which Justice Black quoted from *Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941).

**1.** Plaintiff originally sought a temporary restraining order to enjoin the scheduled March 17, 1986 hearing. That quest for relief was mooted by the postponement of that hearing. Since this suit was commenced, the Commission has taken no further action concerning plaintiff.

*Younger* had been applied in civil cases in order to prevent interference by a federal district court in certain pending state civil litigation. *See Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (Rehnquist, J.), involving a federal constitutional challenge to Texas child protection laws and a pending state court child abuse case instituted by Texas authorities; *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (White, J.), involving an attack on an Illinois attachment statute and a pending state court action instituted by an official Illinois agency concerning allegations of fraudulent concealment of assets in order to obtain public assistance; *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (Rehnquist, J.), holding *Younger* applicable in the context of a New York state contempt proceeding. In those cases, the importance of the state interest, rather than the degree to which the civil proceeding resembled a criminal proceeding, was stressed. *See also Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 434–35, 102 S.Ct. 2515, 2522, 73 L.Ed.2d 116 (1982) (Burger, C.J.); *cf. Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604–05, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975).

To date, the Supreme Court has not explicitly extended *Younger* to a pending state administrative proceeding. However, in *Geiger v. Jenkins,* 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 528 (1971), a case in which the State seemingly had a strong interest in the administrative proceeding and in connection with which a federal proceeding would have apparently disrupted the state proceeding and also would have resulted in duplicative proceedings, the Court summarily affirmed a district court decision to abstain when the State Medical Board was in the midst of disciplinary proceedings concerning a doctor. Subsequently, Justice White wrote in *Gibson v. Berryhill,* 411 U.S. 564, 576–77, 93 S.Ct. 1689, 1696–97, 36 L.Ed.2d 488 (1973), that "it is apparent from Geiger that administrative proceedings looking toward the revocation of a

license to practice medicine [in Georgia] may in proper circumstances command the respect due court proceedings ...."

In *Simopoulos v. Virginia State Board of Medicine,* 644 F.2d 321 (4th Cir.1981), Judge Russell, noting the Supreme Court's increasing emphasis in *Younger* cases upon the element of comity, *id.* at 325–26, held that even though a doctor's license had been summarily revoked, seemingly without any assurance of a prompt, post-revocation hearing, *see* Judge Butzner's dissent, *id.* at 334, the district court had correctly abstained. In *Simopoulos,* the plaintiff challenged the federal constitutionality of certain Virginia statutes. In that case, after a Virginia state board administrative hearing had been scheduled at plaintiff's request, the plaintiff, without waiting for the hearing, commenced federal district court action. *Id.* at 322–23. In dissent, Judge Butzner concluded that "a lapse of 56 days between summary revocation and a hearing" at the administrative level, *id.* at 334, was a denial of due process, particularly when viewed in the context of other time lags in the Virginia administrative procedure. Judge Butzner also concluded, *id.* at 335, that the Virginia Board violated due process rights of the physician involved in *Simopoulos* because after the federal district court had abstained under *Younger* principles, the physician was afforded his administrative hearing by the Board and thereafter "the Secretary of the Board simply notified the doctor that after consideration of the evidence 'it was the decision of the Board that your request for termination of revocation of your license to practice medicine in Virginia, pending appeals, be denied.' No reasons for this decision were disclosed." *Id.* at 333. In the within case, although no administrative hearing has yet occurred, the Commission quickly scheduled a hearing upon plaintiff's request and did, when it issued its February 6, thereafter, at the request of plaintiff's attorney, identify and send a copy of the article to plaintiff's attorney.

Another Fourth Circuit case applying *Younger* in an administrative context is *American Civil Liberties Union v. Bozardt*, 539 F.2d 340 (4th Cir), *cert. denied*, 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976), in which the Board of Commissioners on Grievances and Discipline of the South Carolina Bar (Board) was considering charges of ethical violations by an attorney who allegedly had offered legal services of the American Civil Liberties Union (ACLU). The attorney and the ACLU sought a federal court order blocking state administrative disciplinary proceedings initiated by the Board. Judge Boreman affirmed the district court's application of the bar of *Younger* to the federal court relief sought by the South Carolina attorney.

In *Williams v. Red Bank Board of Education*, 662 F.2d 1008, 1016 (3d Cir.1981), the Third Circuit observed:

> Administrative regulation often forms a crucial aspect of a state's implementation of its laws, and to bar *Younger* abstention simply on the ground that the pending proceedings are "administrative" could easily undermine important state policies and concerns.

*See also Flangas v. State Bar of Nevada*, 655 F.2d 946 (9th Cir.1981) (Wallace, J.); *McCune v. Frank*, 521 F.2d 1152, 1158 (2d Cir.1975) (Smith, J.). In *Williams*, Judge Garth, writing for the Third Circuit, concluded that the district court should not interfere with administrative proceedings court should not interfere with administrative proceedings relating to whether a teacher could be deprived of tenure, noting two criteria: (1) the state's interest in proceeding without federal intrusion, and (2) the adequacy of the administrative process in question.[2]

■ *Younger* is not applicable unless the forum, judicial or administrative, provides to the federal plaintiff an adequate opportunity to raise his federal constitutional claims. *See Middlesex County Ethics*

*Committee*, 457 U.S. at 432, 102 S.Ct. at 2521. In this instance, Maryland's statutory scheme, which establishes the procedures by which physicians may be disciplined, does not preclude a doctor such as plaintiff herein from raising his constitutional claims in the state courts on appeal from the Commission's administrative ruling and perhaps also during the administrative hearing. *See* the discussion *infra* at p. 546. Accordingly, the within challenged procedures are adequate. *See Williams*, 662 F.2d at 1020–22.

*Younger* requires that a federal plaintiff exhaust his state remedies before requesting federal relief.

> [A] necessary concomitant of Younger is that a party in appellee's posture must exhaust his state appellate remedies before seeking relief in the District Court, unless he can bring himself within one of the exceptions specified in Younger.

*Huffman*, 420 U.S. at 608, 95 S.Ct. at 1210. Thus, lawyers have been required to wait until state disciplinary proceedings have been completed and until state judicial appellate remedies have been exhausted before they have been permitted to pursue their federal claims in federal court. *See American Civil Liberties Union*, 539 F.2d at 345.

In this case, Maryland's statutes specifically permit Commission decisions to be appealed. Md. Health Occ. Code Ann. § 14–508(b) (1986). More importantly, the Maryland statute states explicitly that constitutional questions can be raised in such an appeal. Md. State Gov't Code Ann. § 10–215(g)(1984). *See also, Maryland Commission for Fair Representation v. Tawes*, 228 Md. 412, 426, 180 A.2d 656 (1962). Thus, the within plaintiff does have adequate opportunity to present for decision his federal constitutional claims in the courts of the State of Maryland, as well as in a Maryland administrative forum.

---

**2.** For cases other than *Simopoulos* applying *Younger* in the physician-administrative agency setting, *see Rucker v. Wilson*, 475 F.Supp. 1164, 1166 (E.D.Mich.1979); *Schachter v. Whalen*, 445 F.Supp. 1376, 1381 (S.D.N.Y.), *aff'd*, 581 F.2d 35 (2d Cir.1978) (per curiam).

Plaintiff, however, asserts that certain alleged procedural defects in the Maryland medical disciplinary procedures constitute "extraordinary circumstances"[3] so that this federal court need not and should not abstain. But such a challenge, in and of itself, is not enough to permit plaintiff herein to prevail. "[T]he Supreme Court has repeatedly rejected the argument that a constitutional attack on state procedures automatically vitiates the adequacy of those procedures for purposes of *Younger* abstention." J. Cook & J. Sobieski, Civil Rights Actions § 3.11, at 3–116 (1985) (footnote omitted). Otherwise, any alleged violation of procedural due process would be sufficient to circumvent *Younger*. Herein, plaintiff's sundry allegations of procedural due process violations essentially appear to fall into three categories: (1) failure to provide a prompt hearing; (2) failure of the Commission to adhere to its statutory mandate and its own regulations; and (3) bias and lack of independent, objective capacity on the part of the Commissioners in the light of the Commission's overlapping functions. None of those claims is sufficient in this case to constitute an extraordinary circumstance that warrants the nonapplication of *Younger*.

In *Rucker v. Wilson*, 475 F.Supp. 1164 (E.D. Mich.1979), Judge Joiner held that *Younger* required abstention even though a hearing in connection with disciplinary charges against a physician/plaintiff was not held for over three years from the time the complaint was filed. Herein, not only was an administrative hearing scheduled less than two months following the emergency suspension of plaintiff's license, but the Commission seems to have moved promptly. *See Simopoulos*, 644 F.2d 321 (4th Cir.1981). Plaintiff apparently questions whether the total hearing process can or will be conducted and concluded with reasonable promptness. The record discloses no reason for this Court to believe that any such danger exists.

Plaintiff asserts that he is entitled to relief herein if only because Med Chi filed its report with the Commission 110 days after the investigation commenced, and not within 90 days as explicitly required by Md. Health Occ. Code Ann. § 14–501(d)(1)(i)(1986). That position may not prevail herein. An agency's violation of its own rules is not *per se* a violation of due process. *United States v. Caceres*, 440 U.S. 741, 750–52, 99 S.Ct. 1465, 1470–71, 59 L.Ed.2d 733 (1979) (Stevens, J.); *Bowens v. North Carolina Department of Human Resources*, 710 F.2d 1015, 1019 (4th Cir. 1983) (Butzner, S.J.); *Rucker*, 475 F.2d at 1166.

Plaintiff also contends that he cannot receive a fair and impartial hearing by the Commission because of an alleged insufficient separation of functions assigned to and performed by the Commission. A majority of the Commission is composed of persons who are members or officers of or nominated by Med Chi, the body which investigates charges. The Commission also decides whether to investigate in addition to deciding whether to issue suspension orders, and participates in prehearing conferences before holding hearings and making decisions. But such overlapping functions are common to the administrative process and while, in a given case, such overlapping might be relevant and material to a determination, *vel non*, of extra-judicial bias or lack of impartiality, there is no such showing or even proffer herein.[4]

---

**3.** These arguments are seemingly also assertions that the state forum is inadequate. *See Simopoulos*, 644 F.2d at 328, in which Judge Russell wrote that "all the exceptions [to *Younger*] based on 'exceptional considerations,' have involved situations in which the federal plaintiff's claim for federal relief was not such as could be resolved in a pending state proceeding."

**4.** *See*, by way of contrast, *Gibson*, 411 U.S. at 579, 93 S.Ct. at 1698, in which the pecuniary interest of independent optometrists who composed a regulatory board which limited the growth of the number of corporate optometrists was held to be sufficient reason to find the board not unbiased in the exercise of its disciplinary power and called into play the exception to the *Younger* doctrine.

Administrative decisionmakers, like judicial ones, are entitled to a "presumption of honesty and integrity," *see Withrow v. Larkin*, 421 U.S. 35, 47 [95 S.Ct. 1456, 1464, 43 L.Ed.2d 712] (1975), and absent a showing of bias, stemming from an "extra-judicial source," they are not constitutionally precluded from making the determination that they are directed to make by their employer. *See generally Bowens v. North Carolina Department of Human Resources*, 710 F.2d 1015, 1020 (4th Cir.1983) ("To be disqualifying, personal bias must stem from a source other than knowledge a decision maker acquires from participating in a case.").

*Morris v. City of Danville, Virginia*, 744 F.2d 1041, 1044–45 (4th Cir.1984). In *Morris*, Judge Phillips held that the district court erred when it concluded that because the City Manager of Danville, Virginia made the initial "conditional decision" to terminate the Chief of Police, the City Manager was constitutionally precluded from acting as the ultimate administrative decisionmaker in the subsequent hearing. *Id.* at 1044. *See also Duffield v. Charleston Area Medical Center, Inc.*, 503 F.2d 512 (4th Cir.1974) (Russell, J.), cited and relied upon in *Morris* at 1045.

In this case, plaintiff has asserted no specific bias on the part of any member of the Commission. Nor has plaintiff made any request that any Commission member disqualify himself. While it may be, as plaintiff states, that the Commission has not issued any regulations regarding how such disqualification can be sought, that does not mean plaintiff cannot seek such disqualification. Moreover, there is no evidence that plaintiff has ever even tried to discover how to file and to press a motion for disqualification of a Commission member.

In sum, the record herein requires the grant, pursuant to the teachings of *Younger* and its progeny, of defendants' motion to dismiss.